## COOK *v.* HART.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 1067. Argued October 31, November 1, 1892. — Decided November 21, 1892.

*Ker* v. *Illinois*, 119 U. S. 436, and *Mahon* v. *Justice*, 127 U. S. 700, **affirmed** as to the following points :

(1) That this court will not interfere to relieve persons who have been arrested and taken by violence from the territory of one State to that of another, where they are held under process legally issued from the courts of the latter State;

(2) That the question of the applicability of this doctrine to a particular case is as much within the province of a state court, as a question of common law or of the law of nations, as it is of the courts of the United States.

*Ex parte Royall*, 117 U. S. 241, and *Ex parte Fonda*, 117 U. S. 516, adhered to as to the point that where a person is in custody under process from a state court of original jurisdiction for an alleged offence against the laws of that State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, a Circuit Court of the United States has a discretion whether it will discharge him in advance of his trial in the court in which he is indicted, which discretion will be subordinated to any special circumstances requiring immediate action.

The exercise of the power to issue writs of *habeas corpus* to a state court proceeding in disregard of rights secured by the Constitution and laws of the United States, before the question has been raised or determined in the state court, is one which ought not to be encouraged.

In this case the court affirms the judgment of the Circuit Court refusing to discharge on writ of *habeas corpus* a prisoner who had been surrendered by the Governor of Illinois on the requisition of the Governor of Wisconsin as a fugitive from justice, but who claimed not to have been such a fugitive, it appearing that the case was still pending in the courts of the State of Wisconsin, and had not been tried upon its merits; and this court further held,

(1) That no defect of jurisdiction was waived by submitting to a trial on the merits;

(2) That comity demanded that the state courts should be appealed to in the first instance;

(3) That a denial of his rights there would not impair his remedy in the Federal Courts;

(4) That no special circumstances existed here such as were referred to in *Ex parte Royall*, 117 U. S. 241.

THIS was an appeal from an order of the Circuit Court for the Eastern District of Wisconsin discharging a writ of *habeas corpus*, and remanding the petitioner Charles E. Cook to the custody of the sheriff of Dodge County, Wisconsin. The facts of the case were substantially as follows:

On March 9, 1891, the governor of Wisconsin made a requisition upon the governor of Illinois for the apprehension and delivery of Cook, who was charged with a violation of section 4541 of the laws of Wisconsin, which provides that "any officer, director, . . . manager, . . . or agent of any bank, . . . or of any person, company, or corporation, engaged in whole or in part in banking, brokerage, . . .

or any person engaged in such business in whole or in part, who shall accept or receive on deposit or for safe keeping, or to loan, from any person, any money . . . . for safe keeping or for collection, when he knows or has good reason to know, that such bank, company or corporation, or that such person is unsafe or insolvent, shall be punished," etc. Rev. Stat. Wis. § 4541. The affidavits annexed to the requisition tended to show that the petitioner Cook and one Frank Leake, in May, 1889, opened a banking office at Juneau, in the county of Dodge, styled the "Bank of Juneau," and entered upon and engaged in a general banking business, with a pretended capital of $10,000 and continued in such business, soliciting and receiving deposits up to and including June 20, 1890, when the bank closed its doors; that during all this time Cook had the general supervision of the business, and was the principal owner of the bank, and all business was transacted by him personally, or by his direction by one Richardson, acting as his agent; that Cook frequently visited the bank, and well knew its condition; that from January 6 to June 20, 1890, Cook, by the inducements and pretences held out by the bank, received deposits from the citizens of that county to the amount of $25,000; that this was done by the express order and direction of Cook, and such amount appeared upon the books of the bank at the time it failed as due to its depositors; that Cook, while receiving these deposits, drew out of the bank all of its pretended capital stock, if any were ever put in, and also all the deposits, except the sum of $5048 in money and securities, which was in the bank at the time it closed; that on June 23, 1890, Cook and Leake assigned their property for the benefit of their creditors; that on the sixth of January, 1890, and from that time onward, Cook knew and had good reason to know that both he and Leake and the bank were each and all of them unsafe and insolvent; that on June 20, 1890, at about four o'clock in the afternoon, the said Cook and Leake accepted and received a deposit in said bank from one Herman Becker, to the amount of $175 in money; and that said deposit was received by direction and order of the said Cook, he knowing that said bank was unsafe and insolvent. There

was also annexed a complaint setting forth substantially the same facts, and a warrant issued by a justice of the peace for Dodge County for the apprehension of Cook. Upon the production of this requisition, with the documents so attached, the governor of Illinois issued his warrant for the arrest and delivery of Cook to the defendant, as agent of the executive authority of the State of Wisconsin. Cook was arrested by the sheriff of Cook County, Illinois, and on the same day, and while still in the custody of the sheriff, procured a writ of *habeas corpus* from the Circuit Court of Cook County to test the legality of his arrest. That court on June 6, 1891, decided that the arrest was legal, remanded Cook to the custody of the sheriff, and he was thereupon delivered to the defendant as executive agent, and conveyed to Wisconsin, where he was examined before the magistrate issuing the warrant, and held to answer the charge. During the September term of the Circuit Court of that county an information was filed against him, charging him with the offence set out in the original complaint. Upon his application the trial was continued to the term of said court beginning in February, 1892. He appeared and was arraigned at that term, pleaded not guilty, and the trial was begun, when and during the pendency of such trial, Cook sued out a writ of *habeas corpus* from the Circuit Court of the United States, claiming that his extradition from Illinois to Wisconsin, was in violation of the Constitution and laws of the United States. It was established upon the hearing, to the satisfaction of the court below, that Cook for some years prior to the 20th day of June, 1890, and for some years prior to his arrest upon the warrant of the executive of Illinois, had been and still was a resident of the city of Chicago ; that he made occasional visits to Wisconsin in connection with his banking business at Juneau and elsewhere ; that he left Chicago on June 17, 1890, and went to Hartford, in the county of Washington, State of Wisconsin, where he spent the whole of the 18th day of June, proceeding thence to Beaver Dam, in the county of Dodge, where he was engaged during the whole of the 19th day of June with business not connected with the Bank of Juneau ; that early in the morn-

ing of June 20 he left ·Beaver Dam, and made .a continuous journey to Chicago, arriving there at 2 ⌐'clock in the after: noon; and that he did not, on the occasion of that visit to Wisconsin, visit or pass through the village of Juneau, and had not been there for some three weeks prior to the closing of the bank on June 20. It was also conceded at the hearing that the particular deposit by Herman Becker, charged in the complaint upon which the requisition proceedings were had, was actually made at 4 o'clock in the afternoon of June 20, and after the petitioner's arrival in Chicago.

· Upon the hearing· of the· writ of *habeas corpus*, the petitioner was remanded to the custody of the defendant, (49 Fed. Rep. 833,) and thereupon he appealed to this court.

.*Mr. Solicitor General* for appellant. ·

· I. The petitioner was not at the time of· the commission of the alleged offence, the suing out of the requisition, and his arrest and rendition thereunder, a fugitive from justice.

ᴠ· It is conceded that he· was not in Wisconsin at the time when the deposit of Herman Becker was received, but in the State of Illinois, the State of his citizenship. "To be a fugitive from justice in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime· is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offence, he has left its jurisdiction and is found within the territory of another." *Roberts* v. *Reilly*, 116 U. S. 80, 97.

This court also held that the fugitive was entitled under the· act of Congress, "to insist upon proof that he was within the demanding State at the time he is alleged to have committed the crime charged, and subsequently withdrew from her jurisdiction so that he could not be reached· by her criminal process." *Ex parte Reggel*, 114 U. S. 642, 651.

It was held in the following cases that actual personal presence in the demanding State at or after the commission of the crime is essential to make one a "fugitive from justice:" *Ex parte Joseph Smith*, 3 McLean, 121; *Jones* v. *Leonard*, 50 Iowa, 106; *Wilcox* v. *Nolze*, 34 Ohio State, 520; *In re Mohr*, 73 Alabama, 505; *Tennessee* v. *Jackson*, 36 Fed. Rep. 258; *Hartman* v. *Aveline*, 63 Indiana, 344.

II. Unless a fugitive from justice, such arrest and detention was without jurisdiction, unauthorized and void, and contrary to the rights guaranteed the petitioner under the Constitution of the United States, and he should be released by this court on *habeas corpus*.

The Supreme Court of the United States recognizes that this is a personal right, and not alone a right of the State where the accused is found. *Ex parte Reggel*, 114 U. S. 642, 651. See also *United States* v. *Rauscher*, 119 U. S. 407; *Holmes* v. *Jennison*, 14 Pet. 540; *People* v. *Curtis*, 50 N. Y. 321.

The result of all the authorities is that there can be no extradition or interstate rendition, except as authorized by the Constitution and laws of the United States. The States can do nothing except under that authority, and the citizen or the fugitive is exempt, unless his conduct has brought him within its terms.

No one would claim that the Governor of Illinois could send any citizen of that State, demanded by the Governor of Wisconsin, to the latter State for trial. On the other hand, if such action can only be taken under the conditions prescribed by the Constitution and by the laws of the United States, a case not within those conditions is beyond the jurisdiction of the governors. It requires no argument to demonstrate that it is not in conformity with our laws or the spirit of our Constitution to permit the citizen's liberty to be thus invaded and him to be taken to a foreign State, because a ministerial officer, on *ex parte* affidavits, has decided these jurisdictional facts against him (which has not been done in this case, the warrant simply reciting that he, Cook, is "represented to be a fugitive from justice").

All writers are practically agreed that flight from justice is jurisdictional. If jurisdictional, why should not the courts investigate upon *habeas corpus ?* If a court with a jury were proceeding without jurisdiction, the right to so investigate could not be denied. The right is asserted to exist even after conviction in *ex parte Royall, ubi supra,* a proceeding under an alleged unconstitutional act — that is, a proceeding without jurisdiction. If it exists as the right of the prisoner as against courts and juries, it certainly exists against the mere agent of the State or the governor authorizing his act.

III. The right to be released is as available after removal to the demanding State as before, if the conditions prescribed by the Constitution and laws of Congress did not exist at the date of the crime or extradition proceedings.

*Mr. W. C. Williams* (with whom was *Mr. P. G. Lewis* on the brief) for appellee.

Mr. JUSTICE BROWN, after stating the case as above reported, delivered the opinion of the court.

Petitioner claims his discharge upon the ground that he is accused of having illegally received a deposit in his bank at' Juneau, when in fact he had not been in Juneau within three weeks before the deposit was received, and that, at the time it was received, which was about 4 o'clock in the afternoon of June 20, 1890, he was in Illinois, and had been in that State for more than two hours before the deposit was received. He had in fact left Beaver Dam, Wisconsin, at an early hour that day, and travelled continuously to Chicago, not stopping at Juneau, and having no actual knowledge of the illegal deposit charged. Upon this state of facts petitioner insists that his journey from Wisconsin to Illinois was not a "fleeing from justice" within the meaning of Article 4, section 2, of the Constitution; that it is essential to the jurisdiction of the trial court that he should have been a fugitive from justice; and hence that the Circuit Court of Dodge County was without authority to try him for the offence charged, and he should,

therefore, be relieved from its custody upon this writ of *habeas corpus.*

We regard this case as controlled in all its essential features by those of *Ker* v. *Illinois,* 119 U. S. 436, and *Mahon* v. *Justice,* 127 U. S. 700. The former case arose upon a writ of error to the Supreme Court of Illinois. The petitioner had pleaded, in abatement to an indictment for larceny in the criminal court of Cook County, that he had been kidnapped from the city of Lima, in Peru, forcibly placed on board a vessel of the United States in the harbor of Callao, carried to San Francisco, and sent from there to Illinois upon a requisition made upon the Governor of California. After disposing of the point that he had not been deprived of his liberty without "due process of law," the court intimated, in reply to an objection that the petitioner was not a fugitive from justice in the State of California, that "when the governor of one State voluntarily surrenders a fugitive from the justice of another State to answer for his alleged offences, it is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which the demand was made by the one State and the manner in which it was responded to by the other." p. 441. The court further held that the petitioner had not acquired by his residence in Peru a right of asylum there, a right to be free from molestation for the crime committed in Illinois, or a right that he should only be removed thereto in accordance with the provisions of the treaty of extradition; and winds up the opinion by observing that "the question of how far his forcible seizure in another country, and transfer by violence, force or fraud to this country, could be made available to resist trial in the State court, for the offence now charged upon him, is one which we do not feel called upon to decide, for in that transaction we do not see that the Constitution, or laws or treaties of the United States guarantee him any protection. There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offence. . . .

However this may be, the decision of that question is as much within the province of the State court as a question of common law, or of the law of nations, of which that court is bound to take notice, as it is of the courts of the United States." p. 444.

The case of *Mahon* v. *Justice*, 127 U. S. 700, arose upon an application of the Governor of West Virginia to the District Court of the United States for the District of Kentucky, for the release of Mahon upon a writ of *habeas corpus*, upon the ground that he had been, while residing in West Virginia, and in violation of her laws, without warrant or other legal process, arrested by a body of armed men from Kentucky, and, by force and against his will, carried out of the State to answer to a charge of murder in the State of Kentucky. As stated in the opinion of the court, the governor "proceeded upon the theory that it was the duty of the United States to secure the inviolability of the territory of the State from the lawless invasion of persons from other States, and when parties had been forcibly taken from her territory and jurisdiction to afford the means of compelling their return." p. 704. This court held that, while the accused had the right while in West Virginia of insisting that he should not be surrendered to the Governor of Kentucky, except in pursuance of the acts of Congress, and was entitled to release from any arrest in that State not made in accordance with them, yet that as he had been subsequently arrested in Kentucky under the writs issued under the indictments against him, the question was not as to the validity of the arrest in West Virginia, but as to the legality of his detention in Kentucky. "The only question, therefore," said the court, "presented for our determination is whether a person indicted for a felony in one State, forcibly abducted from another State and brought to the State where he was indicted by parties acting without warrant or authority of law, is entitled under the Constitution or laws of the United States to release from detention under the indictment by reason of such forcible and unlawful abduction." p. 706. After a full review of all the prior authorities upon the point, the court came to the conclusion that the

jurisdiction of the court of the State in which the indictment was found was not impaired by the manner in which the accused was brought before it. "There is, indeed," said the court, "an entire concurrence of opinion as to the ground upon which a release of the appellant in the present case is asked, namely, that his forcible abduction from another State, and conveyance within the jurisdiction of the court holding him, is no objection to his detention and trial for the offence charged. They all proceed upon the obvious ground that the offender against the law of the State is not relieved from liability because of personal injuries received from private parties, or because of indignities committed against another State." p. 712.

There was a vacancy in the office of Chief Justice at the time, and two members of the court (Mr. Justice Bradley and Mr. Justice Harlan) dissented upon the ground that the Constitution had provided a peaceful remedy for the surrender of persons charged with crime; that this clearly implied that there should be no resort to force for this purpose; that the cases upon which the court relied had arisen where a criminal had been seized in one country and forcibly taken to another for trial, in the absence of any international treaty of extradition; and that as the application in that case was made by the governor of the State whose territory had been lawlessly invaded, he was entitled to a redelivery of the person charged.

These cases may be considered as establishing two propositions: 1. That this court will not interfere to relieve persons who have been arrested and taken by violence from the territory of one State to that of another, where they are held under process legally issued from the courts of the latter State. 2. That the question of the applicability of this doctrine to a particular case is as much within the province of a State court, as a question of common law or of the law of nations, as it is of the courts of the United States.

An attempt is made to distinguish the case under consideration from the two above cited, in the fact that those were cases of kidnapping by third parties, by means of which the accused were brought within the jurisdiction of the trial State,

and the State had not acted, as here, under legal process, or been in any way a party to the proceedings; that they were cases of tort for which the injured parties could sue the tort-feasors, while in the case under consideration the action is under and by virtue of an act of Congress, and hence the party can ask this court to inquire whether the power thus invoked was properly exercised. The distinction between cases of kidnapping by the violence of unauthorized persons without the semblance of legal action, and those wherein the extradition is conducted under the forms of law, but the governor of the surrendering State has mistaken his duty, and delivered up one, who was not in fact a fugitive from justice, is one which we do not deem it necessary to consider at this time. We have no doubt that the governor upon whom the demand is made must determine for himself, in the first instance, at least, whether the party charged is in fact a fugitive from justice, (*Ex parte Reggel*, 114 U. S. 642; *Roberts* v. *Reilly*, 116 U. S. 80,) but whether his decision thereon be final is a question proper to be determined by the courts of that State. A proceeding of that kind was undertaken in this case when Cook applied to the State Circuit Court of Chicago to obtain a writ of *habeas corpus* to test the legality of his arrest. Upon the hearing of this writ the court decided the arrest to be legal, and remanded Cook to the custody of the sheriff, by whom he was delivered to the defendant as executive agent of the State of Wisconsin. Cook acquiesced in this disposition of the case, and made no attempt to obtain a review of the judgment in a superior court. Long after his arrival in Wisconsin, however, and after the trial of his case had begun, he made this application to the Circuit Court of the United States for that district upon the ground he had originally urged, namely, that he was not a fugitive from justice within the meaning of the Constitution and laws of the United States. That court decided against him, holding that he had been properly surrendered.

It is proper to observe in this connection that, assuming the question of flight to be jurisdictional, if that question be raised before the executive or the courts of the surrendering State, it is presented in a somewhat different aspect after the accused

has been delivered over to the agent of the demanding State, and has actually entered the territory of that State, and is held under the process of its courts. The authorities above cited, if applicable to cases of interstate extradition, where the forms of law have been observed, doubtless tend to support the theory that the executive warrant has spent its force when the accused has been delivered to the demanding State; that it is too late for him to object even to jurisdictional defects in his surrender, and that he is rightfully held under the process of the demanding State. In fact, it is said by Mr. Justice Miller in *Ker* v. *Illinois*, p. 441, that "the case does not stand where the party is in court and required to plead to an indictment, as it would have stood upon a writ of *habeas corpus* in California." Some reasons are, however, suggested for holding that, if he were not in fact a fugitive from justice and entitled to be relieved upon that ground by the courts of the surrendering State, he ought not to be deprived of that right by a forced deportation from its territory before he could have an opportunity of suing out a writ of *habeas corpus.* That question, however, does not necessarily arise in this case, since the record before us shows that he did sue out such writ before the criminal court of Cook County, and acquiesced in its decision remanding him to the custody of the officer.

As the defence in this case is claimed to be jurisdictional, and, in any aspect, is equally available in the State as in the Federal courts, we do not feel called upon at this time to consider it or to review the propriety of the decision of the court below. We adhere to the views expressed in *Ex parte Royall,* 117 U. S. 241, and *Ex parte Fonda,* 117 U. S. 516, that, where a person is in custody under process from a state court of original jurisdiction for an alleged offence against the laws of that. State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court of the United States has a discretion whether it will discharge him in advance of his trial in the court in which he is indicted, although this discretion will be subordinated to any special circumstances requiring immediate action. While the Federal courts have the power and may discharge the accused in ad-

vance of his trial, if he is restrained of his liberty in violation of the Federal Constitution or laws, they are not bound to exercise such power even after a State court has finally acted upon the case, but may, in their discretion, require the accused to sue out his writ of error from the highest court of the State, or even from the Supreme Court of the United States. As was said in *Robb* v. *Connolly*, 111 U. S. 624, 637: "Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them." We are unable to see in this case any such special circumstances as were suggested in the case of *Ex parte Royall* as rendering it proper for a Federal court to interpose before the trial of the case in the state court. While the power to issue writs of *habeas corpus* to state courts which are proceeding in disregard of rights secured by the Constitution and laws of the United States may exist, the practice of exercising such power before the question has been raised or determined in the state court is one which ought not to be encouraged. The party charged waives no defect of jurisdiction by submitting to a trial of his case upon the merits, and we think that comity demands that the state courts, under whose process he is held, and which are equally with the Federal courts charged with the duty of protecting the accused in the enjoyment of his constitutional rights, should be appealed to in the first instance. Should such rights be denied, his remedy in the Federal court will remain unimpaired. So far from there being special circumstances in this case to show that the Federal court ought to interfere, the fact that, with ample opportunity to do so, he did not apply for this writ until after the jury had been sworn and his trial begun in the state court, is of itself a special circumstance to indicate that the Federal court should not interpose at this time.

The judgment of the court below refusing the discharge, is therefore,

*Affirmed.*