## In re FLINN.

(Circuit Court, W. D. North Carolina. August 21, 1893.)

1. HABEAS CORPUS—FEDERAL COURTS—REMEDY IN STATE COURT.

The power of the United States circuit court to grant writs of habeas corpus should not be exercised where petitioner is in custody under a warrant issued to reco⋅ ·· a penalty of $50 imposed for failure to· pay a license tax as peddler, and unnecessary delay in the proceeding, injustice, oppression, or inability to give the small bail required are not alleged, and he contends that the act—a recent one—by which such tax and penalty are prescribed, is violative of the exclusive constitutional authority of the United States to regulate commerce among the states; but, acting in a spirit of comity, the court should leave the question of the constitutionality of the act to the state courts, and require the petitioner to seek his remedy therein.

2. CONSTITUTIONAL LAW—INTERSTATE COMMERCE.

A state statute which authorizes legal process to be issued for the collection of a penalty for the nonpayment of taxes on sale by sample of goods not then within the state is repugnant to the United States constitution, as being a regulation of interstate commerce.

3. HAWKERS AND PEDDLERS—WHAT ARE SALES BY—LICENSE TAX.

The North Carolina statute, ratified March 6, 1893, entitled "An act to raise revenue," (section 23,) requiring peddlers of merchandise to pay a license tax, etc., and prescribing by section 35 a penalty for nonpayment of such tax, does not apply to sales by sample of goods not at the time of sale within the state, and ready for immediate delivery, but applies only where goods are actually exposed and offered for sale, and ready for delivery at once to the purchaser.

At Law. Petition by R. J. Flinn for a writ of habeas corpus. Pending final hearing, the petitioner was discharged from custody, and, that fact being shown to the court, the petition was dismissed.

Statement by DICK, District Judge:

Petition of R. J. Flinn for a writ of habeas corpus to be released from arrest and custody of the coroner under proceedings at law, entitled "J. G. Grant, Sheriff, vs. R. J. Flinn and D. C. Lunceford," now pending before a justice of the peace in the county of Henderson, and state of North Carolina, for the collection of a penalty of $50, alleged to have been incurred as a peddler, under section 35 of "An act to raise revenue," (chapter 294 of the Laws of North Carolina,) for the nonpayment of taxes imposed in section 23 of said act.

H. G. Ewart, for petitioner,

Cited Welton v. State, 91 U. S. 275; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. Rep. 725; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. Rep. 1380; Bowman v. Railroad Co., 125 U. S. 465, 8 Sup. Ct. Rep. 689, 1062; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. Rep. 681; Range Co. v. Johnson, 84 Ga. 754, 11 S. E. Rep. 233.

DICK, District Judge, (after stating the facts.) This petition for a writ of habeas corpus, with the accompanying exhibits of pro-

ceedings at law instituted and pending before a justice of the peace of Henderson county, and state of North Carolina, were presented to me at chambers, and were ordered to be filed for hearing in the United States circuit court at Greensboro, such court having concurrent original jurisdiction in such cases. The petitioner, in substance, alleges that he is a citizen and resident of the state of Kentucky, and that he has been arrested and is now in the custody of the coroner of Henderson county by virtue of a warrant issued by a justice of the peace of said county for the recovery of a penalty alleged to have been incurred by him as a peddler, under sections 23 and 35 of a revenue law of this state, enacted March 6, 1893, (chapter 294, p. 243, Laws N. C.;) that he is now, and for many years has been, a duly appointed and authorized agent of L. Cahill & Co., a firm engaged in the business of manufacturing and selling sulky plow carriages at Kalamazoo, in the state of Michigan; that the nature and extent of his employment as such agent is the making of contracts of sale for sulky plow carriages, by exhibiting a sample, and engaging that the commodities sold shall correspond with the sample, and be delivered in unbroken packages to purchasers by his said employers, who are the manufacturers. The petitioner insists in his petition that such employment and business comes within the scope of interstate commerce, and as such can only be regulated by the congress of the United States, and that he is not liable to the taxes and penalty alleged to be imposed by the revenue laws of this state, and that his imprisonment for failing to pay such taxes and penalty is illegal, as being in disregard of the constitution of the United States. The petitioner, in his petition, further insists that upon a fair and reasonable construction of the said sections of the revenue law he is not liable to the taxes and penalty sought to be recovered, as he never at any time or place exposed sulky plow carriages for sale and immediate delivery to purchasers, but only exhibited a sulky plow carriage as a sample to inform persons of the nature and quality of the articles which he proposed to sell as agent of the manufacturers; that he accepted notes executed by purchasers, made payable to the firm of L. Cahill & Co., and on his part made covenants in behalf of the firm as to the quality of the article sold by sample, and as to safe and prompt delivery. Petitioner further insists that under a provision of said section he is not liable to taxes and penalty, as the goods were manufactured by his said employers, and as such were offered for sale by samples in this state by him as agent.

The counsel of petitioner, in his argument and brief, insisted upon the following legal propositions as being applicable to this case: That the constitution of the United States (art. 1, § 8) confers upon congress the power to regulate commerce with foreign nations and among the several states; that such power is necessarily exclusive, and the failure of congress to make express regulations indicates its will that the subject shall be left free from any restrictions or impositions, and any regulation of the subject by

v.57F.no.4—32

the states, except in certain local matters within the scope of their police power, is in disregard of the constitution; that the negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce; that a tax or charge for a license to sell goods is in effect a tax upon the goods themselves; that interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state; that a state cannot levy a tax or impose any other restrictions upon the citizens or inhabitants of other states for selling or seeking to sell their goods in such state before they are introduced therein, as such a tax or restriction would be a burden on interstate commerce. He conceded the law to be well settled that if such goods, when sold, were in the state, and part of the general mass of property, they would be liable to taxation, for a state, in the discretion of its legislature, may levy a tax upon every species of property within its jurisdiction, and may also require a license tax from any peddler or itinerant salesman making sale of goods within the state at time of sale if no discrimination is made as to such occupations against nonresident citizens. The counsel of petitioner further insisted that upon a fair and reasonable construction of section 23 of the state revenue act his client was not liable to pay taxes and obtain a license to sell goods as a peddler, as he did not carry with him any goods for sale and delivery to purchasers. Neither was he required to procure a license as an "itinerant salesman," as his occupation was not within the terms of the law; he did not "expose for sale, either on the street or in houses rented temporarily for that purpose, goods, wares, and merchandise;" and, moreover, his occupation comes within the exemption of the act, as the goods which he proposed to sell by sample belonged to and were of the manufacture of his employers, L. Cahill & Co. That in construing the language of the act of assembly to find out its intent and purpose this court should assume that the legislature of the state, at the time when such revenue act was enacted, was well aware of the decisions of the supreme court of the United States as to the exclusive power of congress to regulate commerce among the several states, and desired to frame a revenue act in conformity with the supreme law of the land, declared by the highest judicial tribunal of the nation. Any other construction would be unjust to the law-abiding reputation of the people of this state, and not in accordance with the ordinary meaning of the words used by the legislature to express its lawful intent and purpose.

The matters of fact alleged in this petition bring this proceeding clearly within the jurisdiction of this court, and the principles of law and rules of statutory construction insisted upon by counsel seem to be well sustained by his argument and the adjudged cases cited; but, under the facts and circumstances disclosed in the petition, I am not ready to grant the writ of habeas corpus as prayed for. The power given to federal courts to arrest the arm of

state authorities and to discharge persons held by them for alleged violations of their local law is one of great delicacy, and should only be exercised when it clearly appears that their proceeding is repugnant to the constitution of the United States, and urgent justice demands prompt action. Federal courts should certainly assume that a state legislature will not willfully disregard the constitution, and that a state court will perform an obligatory duty and administer justice in conformity with the national constitution and laws. In former years the prompt and frequent exercise of paramount power by federal courts produced much popular dissatisfaction, angry political discussion, and some conflict of judicial opinion and authority, which disturbed the good feeling and harmony which ought always to prevail among the people of a common country, and diminished the comity that should ever exist between courts legally designed and established to administer justice in the same territorial limits, and equally bound to guard, protect, and enforce the rights of all citizens under the national constitution and laws. The supreme court of the United States in recent decisions has in clear and positive terms announced the liberal and conservative doctrines of comity towards the state courts which should be applied by inferior federal courts in the exercise of judicial discretion on applications for writs of habeas corpus where the petition shows that the applicant is in custody under process from a state court of original jurisdiction for an alleged offense against the laws of the state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. Rep. 734; Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. Rep. 40. I will not make quotations at length from these opinions so carefully considered, so well expressed, and so easily accessible. In the recent case, In re Frederich, 149 U. S. 70--77, 13 Sup. Ct. Rep. 793, the court says:

"We adhere to the views expressed in that case, [Ex parte Royall.] It is certainly the better practice, in cases of this kind, to put the prisoner to his remedy by writ of error from this court, under section 709 of the Revised Statutes, than to award him a writ of habeas corpus; for under proceedings by writ of error the validity of the judgment against him can be called in question, and the federal court left in a position to correct the wrong, if any, done the petitioner, and at the same time leave the state authorities in a position to deal with him thereafter, within the limits of proper authority, instead of discharging him by habeas corpus proceedings, and thereby depriving the state of the opportunity of asserting further jurisdiction over his person in respect to the crime with which he is charged. In some instances, as in Medley, Petitioner, 134 U. S. 160, 10 Sup. Ct. Rep. 384, the proceeding by habeas corpus has been entertained, although a writ of error could be prosecuted; but the general rule and better practice, in the absence of special facts and circumstances, is to require a prisoner who claims that the judgment of a state court violates his rights under the constitution or laws of the United States to seek a review thereof by writ of error, instead of resorting to the writ of habeas corpus."

I fully recognize the justice, propriety, expediency, and wisdom of such general rule and practice, and believe that it will be more satisfactory to public sentiment and judicial opinion, and better subserve the ends of justice, to have questions of such a character

authoritatively decided by the supreme court of the United States, than to leave them as open subjects of political discussion, forensic debate, and disagreement of judicial action in subordinate state and national courts. Such a course of procedure tends to preserve the dignity of both state and national courts, to prevent unseemly conflict of judicial authority, and to secure the peace,' harmony, and stability of the Union under our peculiar system of government.

The counsel·for petitioner admitted that such general rule of practice was well established, but insisted that it should not be applied in cases affecting interstate commerce, as the delay, vexation, and expense to parties seeking the enforcement of plain constitutional rights through the successive stages of procedure in state courts, and then by writ of error to the supreme court of the United States, would greatly hinder and restrain the freedom and utility of interstate commerce, and deprive nonresident citizens of equality of privilege in the sale of the articles and products of their enterprise and industry. I am aware that such considerations have influenced some federal judges in the exercise of their discretion in cases which had passed to judgment in a state court, or where the questions of law involved had been often determined by courts on a similar state of facts. Ex parte Kieffer, 40 Fed. Rep. 399, and other subsequent cases. I will not express concurrence or dissent as to such discretionary rulings, as judicial action has not been uniform, and they do not apply to the case now before me. In re Spickler, 43 Fed. Rep. 653, and other cases. In this case no hearing has been had in a state court of inferior or superior original jurisdiction, and the constitutionality and construction of a recent state statute are the questions of law involved. The amount of the penalty sued for is small. The petitioner does not allege any unnecessary delay in the proceeding, any facts or circumstance of injustice and oppression, or any inability to give the small amount of bail required.

I am of opinion that when a person goes into a state to carry on business he should be ready and willing to comply with the requirements of local law, and have his rights determined, in the first instance, by the courts of such state, where the rights of resident citizens are determined; and he should not complain unless his case is unnecessarily delayed, or he is in immediate danger of being subjected to manifest and grievous wrong and oppression. I am well satisfied that the legislature of this state intended to enact a revenue law that was not repugnant to the constitution of the United States; and if, through inadvertence, the section of the statute which we are considering was a regulation of interstate commerce, I am confident that the constitutional rights of the petitioner could and would be readily secured and enforced in the courts of this state. Before any court of this state had an opportunity of hearing the parties and determining the rights involved the petitioner applied to this court to arrest the legal proceedings just begun, where no facts or circumstances of wrong or oppression had occurred, and no spirit of unfairness or injustice had been

manifested, and a very small amount of bail had been required to secure his presence before the justice of the peace who issued the warrant. Under such a condition of facts and circumstances I would have dismissed the petitioner if the counsel of the plaintiff in the proceeding in the state court had not entered into a written and filed agreement with the counsel of petitioner that "the petition for the writ of habeas corpus may be heard and the case disposed of by the United States court at Greensboro on any day without notice to the plaintiff." This agreement shows a consent to have the case disposed of on its merits, but, as I have confidence in the ability, integrity, and learning of the counsel of the plaintiff, I desire to hear him in argument or by brief as to his legal views in support of the prosecution in the state court.

For the purpose of affording such opportunity I direct the following entry to be made of record:

The court at this term having heard argument and considered the matters of fact alleged in the petition, and being strongly inclined to the opinion that the matters of fact alleged are sufficient to sustain the propositions of law relied on by the counsel of petitioner.

First. That if the act of assembly of North Carolina bears the construction which was insisted upon by the plaintiff in causing legal process to be issued for the collection of a penalty for the non-payment of taxes on sales by sample of goods not then within the state, then the act is a regulation of interstate commerce, and repugnant to the constitution of the United States.

Second. That the statute of North Carolina involved in this matter does not apply to sales made by sample of goods not within the state at the time of sale, and ready for immediate delivery, but applies only where goods are actually exposed and offered for sale, and, upon the sale being effected, are ready for delivery at once to the purchaser.

The court, however, in a spirit of comity towards state courts, is desirous of the plaintiff having an opportunity to show cause why a writ of habeas corpus shall not issue, and why he shall not be allowed to enforce his rights in the courts of this state.

Now it is ordered that, unless the plaintiff shall show such cause on or before Monday next, August 14, 1893, or unless he procures the discharge of the petitioner from custody on or before the said date, and so notifies this court, then a writ of habeas corpus as prayed for is hereby directed to be issued by the clerk of this court, returnable to this court on or before Monday, August 21, 1893.

### In re R. J. Flinn.

The following order was made in open court, this August 14, 1893:

In this case, J. G. Grant, sheriff, the plaintiff in the case at law in Henderson county, having notified the court in writing, duly

signed, that he had caused the defendant to be discharged from custody,

It is ordered that the petition be dismissed, at the cost of the petitioner.