The appellant, Jimmy Wayne Davis, was indicted on four counts for the capital crime of murder committed during the course of a robbery in the first degree, § 13A-5-40(a)(2), Code ofAlabama (1975). The appellant was found guilty of the capital offense as charged in the indictment, and the jury returned a recommendation of a death sentence. The trial court conducted a sentencing hearing and thereafter sentenced the appellant to death by electrocution.
The appellant, Jimmy Wayne Davis, often stayed with Mae C. McGill, the victim, at her residence, which was located in Sylacauga, Alabama. The appellant and his son, Lane Davis, ate dinner at the residence of Mae C. McGill on September 3, 1984. The appellant and Mae McGill made plans to go out for drinks after dinner. Pursuant thereto, Mae McGill drove Lane Davis to a cousin's house at approximately 6:00 p.m. Later that night, Mae McGill was hit in the head with a hammer or blunt object and shot twice with a .25-caliber pistol as she lay in bed. One of the bullets passed through her heart and caused her death. There was also evidence that two diamond rings, credit cards, a checkbook, a .25-caliber pistol, and a 1984 blue and white Cadillac were taken from the victim.
The appellant checked in at a Holiday Inn in Ruston, Louisiana, on September 4, 1984, shortly after 8:00 a.m. He indicated on the hotel's form that he was driving a 1984 Cadillac with a license plate later identified as that of the victim. The appellant then drove to Bernice, Louisiana, in an attempt to see his wife, June Davis. One of the appellant's sons, who lived with June Davis, testified that the appellant was driving Mae McGill's Cadillac. He further testified that he would not allow the appellant into his mother's trailer. He also stated that when his mother learned that the appellant was looking for her, she moved in with some friends until the time she learned of the appellant's arrest. The appellant returned to the Holiday Inn after his unsuccessful attempts to contact June Davis. Thereafter, he called Kathleen Trahan, a person whom he had previously lived with in Scott, Louisiana. The appellant drove to the residence of Kathleen Trahan in Scott, Louisiana, on September 5, 1984. Kathleen Trahan received a telephone call from one of the appellant's sisters after being contacted by the appellant. The appellant's sister informed her that the appellant had killed a woman in Alabama. She testified that she became extremely frightened. She also testified that the appellant threatened to shoot her son if she did not go with the appellant. She further testified that the appellant told her that he had killed the woman by shooting her in the chest, hitting her on the head with a hammer, and " 'stuff[ing] her with a pillow to make sure she was dead.' " He also told Kathleen Trahan that, " 'if I [the appellant] could have found my wife, I would have killed her too.' "
Lane Davis, who had been unable to reach Mae McGill, became concerned about her and went to her house. He broke a window in her house in order to gain access, and found the body. The Sylacauga Police Department was contacted and began its investigation.
The appellant left Scott, Louisiana, with Kathleen Trahan and her two children and drove to Las Vegas, Nevada, in the victim's Cadillac, arriving in Las Vegas on September 11, 1984. The appellant asked Kathleen Trahan, upon their arrival in Las Vegas, to pawn one of the rings taken from the victim for $500. The ring was ultimately recovered by the Sylacauga Police Department. The appellant had previously been using the credit cards of Kenneth McGill, one of the victim's former husbands, to pay for his hotel rooms. The appellant, Kathleen Trahan, and her two children stayed at the Western Six Motel in Las Vegas. The appellant asked Kathleen Trahan on September 12, 1984, to sell the other ring that he had taken from the victim. Trahan sold the ring to a jewelry store for $1200; she kept $200, without informing the appellant, and gave the remaining $1000 to him. Later the same evening, Trahan requested that the appellant take her out on the "Strip." She drove to a casino, where she was later able to *Page 112 
escape from the appellant, return to the hotel for her children, and leave Las Vegas.
Kathleen Trahan followed a police car to the police department in Wickinburg, Arizona, on September 13, 1984, at approximately 6:00 a.m. Immediately thereafter, the Sylacauga Police Department was contacted. The Las Vegas Police Department was then notified and they gained access to the appellant's hotel room, where they found him lying in bed. He was then arrested.
 I
The appellant argues that the trial court erred in refusing to grant his motion to exclude and in charging the jury on the issue of murder during robbery in the first degree. The appellant contends, in support of his argument, that the evidence indicated that the theft occurred after the murder and that the theft was committed in contemplation of the appellant's flight from the scene of the shooting. However, contrary to the appellant's argument, the record indicates that the trial court did not err on these grounds and that the State proved a prima facie case of murder during robbery in the first degree. According to § 13A-5-40(a)(2), "[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant" is a capital offense.
"The crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim. The offense consists of two elements, robbing and intentionally killing." Magwood v. State,494 So.2d 124, 148 (Ala.Cr.App. 1985), affirmed, Ex parte Magwood,494 So.2d 154 (Ala. 1986), cert. denied, Magwood v. Alabama,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986), citing Baldwinv. State, 372 So.2d 26 (Ala.Cr.App. 1978), affirmed,372 So.2d 32 (Ala. 1979), vacated on other grounds, 448 U.S. 903,100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980). "The only time element which must be established under § 13A-5-40(a)(2), Code ofAlabama 1975, is that the State must prove the intentional murder occurred during the course of the robbery in question."Clark v. State, 451 So.2d 368, 372 (Ala.Cr.App. 1984). The taking of the property need not occur prior to the killing. Id.
In Clark this court stated:
 " 'In Cobern v. State, 273 Ala. 547, 142 So.2d 869
(1962), the Alabama Supreme Court held that the fact that the victim was dead at the time the property was taken would not militate [against a finding of] the crime of robbery if the intervening time between the murder and the taking formed a continuous chain of events. See also Baker v. State, Ala. Cr. App., 344 So.2d 547 (1977). In the instant case, the intervening time, if any there be, formed a continuous chain of events.'
Clements v. State, 370 So.2d 708 (Ala.Cr.App. 1978), aff'd, in pertinent part, Ex parte Clements, 370 So.2d 723 (Ala. 1979). See also Bufford v. State, 382 So.2d 1162 (Ala.Crim.App.), cert. denied, 382 So.2d 1175 (1980).
"At the time the three opinions cited above were rendered, our present capital statute was not in effect. However, the rationale of those cases is sound and will be here applied to the case at bar.
"As the Alabama Supreme Court stated in Cobern v. State, supra:
 'The jury had the right to infer from the proven facts and circumstances that the robbery began when the attack took place and was consummated when the defendant took the car and fled. . . .' "
Clark v. State, supra, at 372.
Mae McGill was killed in her home, and the evidence overwhelmingly establishes the corpus delicti of murder.Johnson v. State, 473 So.2d 607, 609 (Ala.Cr.App. 1985); Taylorv. State, 276 Ala. 232, 236, 160 So.2d 641 (1964); Jones v.State, 260 Ala. 341, 345, 70 So.2d 629 (1954). The issue remains whether this murder was committed during a robbery.Johnson v. State, supra. "Circumstantial evidence may afford satisfactory proof of the corpus delicti, and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question should be submitted to the jury. McCloud *Page 113 v. State, 401 So.2d 314 (Ala.Crim.App. 1981); Dolvin v.State, 391 So.2d 133 (Ala.Crim.App. 1980)." Magwood v. State,494 So.2d 124, 149 (Ala.Cr.App. 1985). The State presented sufficient circumstantial evidence to prove robbery in the first degree.
A person commits the crime of robbery in the first degree if he "[u]ses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance" during the course of committing a theft or if he "[t]hreatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property" during the course of committing a theft. § 13A-8-43,Code of Alabama (1975), referenced by § 13A-8-41. Furthermore, he must be "armed with a deadly weapon or dangerous instrument" or must cause "serious physical injury to another." §13A-8-41(a), Code of Alabama (1975).
The evidence was clearly sufficient to prove that Mae McGill's assailant used force and caused her death by means of a deadly weapon or dangerous instrument. Furthermore, the evidence showed that the assailant was, at the time he accosted Mae McGill, "in the course of committing a theft." According to § 13A-8-40(b), Code of Alabama (1975),
 " 'In the course of committing a theft' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."
Thus, even if the appellant took the victim's property when he was in "immediate flight after the attempt or commission," his actions were still embraced within the statutory scheme for murder committed during the course of a robbery.
The State presented evidence that the victim's car was recovered at the hotel in which the appellant was staying in Las Vegas, and there was ample testimony that the appellant drove the victim's car from Sylacauga, Alabama, to Las Vegas, Nevada. The State also presented evidence that the victim's two diamond rings were recovered from a pawn shop and a jewelry shop, in Las Vegas, Nevada, where they had been pawned in accordance with the appellant's instructions. The pawn shop operator and the owner of the jewelry store identified Kathleen Trahan as the woman who pawned or sold the rings. A portion of a pawn receipt was found in the victim's automobile in Las Vegas. The State also presented evidence through the testimony of Lane Davis and the victim's daughter that she never removed her rings from her fingers. The State also showed that, upon the apprehension of the appellant in his hotel room in Las Vegas, his suitcase was seized and inventoried. The suitcase contained two guns registered to Kenneth McGill, one of the victim's ex-husbands, and a checkbook on a joint checking account of Kenneth McGill and the victim. The State also provided evidence that the appellant had in his possession credit cards issued to Kenneth McGill, identification cards belonging to the victim, and an insurance check made out to the victim.
"The lack of direct evidence of the taking of property does not undermine [the appellant's] conviction for murder committed during a robbery or an attempted robbery, since the robbery statutes proscribe attempts as well as completed thefts."Johnson v. State, 473 So.2d 607, 611 (Ala.Cr.App. 1985), citingLuke v. State, 444 So.2d 393 (Ala.Cr.App.), affirmed,444 So.2d 400 (Ala. 1983), cert. denied, Luke v. Alabama, 466 U.S. 993,104 S.Ct. 2374, 80 L.Ed.2d 846 (1984).
The trial court properly charged the jury on the elements of the capital offense of robbery or attempt thereof when the victim is intentionally killed. Magwood v. State, supra, at 149. The record indicates that the trial court charged the jury as follows:
 "The two components of a capital offense is [sic] robbery in the first degree and murder or of the intentional killing type committed during robbery in the first degree. The defendant commits the crime of robbery in the first degree if he uses or threatens to use force against the owner of personal property or any *Page 114 
person present while in the course of committing the theft of personal property with the intent to overcome his physical power of resistance in order to compel acquiescence in the taking of personal property in the course of said theft or in any attempt thereof either number one, intentionally causes serious physical injury or death to a person; or, number two, is armed with a deadly weapon or dangerous instrument in the course of committing a theft. Let me back up. In the course of committing a theft the acts which occur in the attempt to commit or in the commission of theft or in the immediate flight after the attempt or commission. A person commits the crime of theft of property if he knowingly obtains or exerts unauthorized control over property of another with the intent to deprive the owner of his property."
The trial judge further instructed the jury as to the meanings of "attempt," "deadly weapon," "dangerous instrument," "serious physical injury," "physical injury," "intentionally," and "during."
The trial court did not err in its refusal to grant the appellant's motion to exclude or in its charge to the jury on the issue of murder committed during a robbery in the first degree.
 II
The appellant argues that the trial court erred in overruling his motion to dismiss on the basis of his alleged illegal return from Nevada to Alabama. He claims that he was denied adequate advice of counsel before signing a waiver of extradition form. He further argues that the trial court erred in refusing his motion to continue the case until the court reporter from Clark County, Nevada, could attend the trial. However, the appellant's claims are without merit.
In Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421
(1886), the defendant was kidnapped from Peru and forcibly brought, against his will, into the jurisdiction of the state whose law he had violated, without reference to or proceeding under the existing extradition treaty. The United States Supreme Court held that no relief could be granted because these facts did not establish any rights under the constitution, laws, or treaties of the United States.
 "The question of how far [appellant's] forcible seizure in another country, and transfer by violence, force, or fraud, to this country, could be made available to resist trial in the State court, for the offence now charged upon him, is one which we do not feel called upon to decide, for in that transaction we do not see that the Constitution, or laws, or treaties, of the United States guarantee him any protection. There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court." Id. at 444, 7 S.Ct. at 229.
The Court further held that the decision of this question "is as much within the province of the State court, as a question of common law, or of the law of nations, of which that court is bound to take notice, as it is of the courts of the United States." 119 U.S. at 444, 7 S.Ct. at 229.
In Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934
(1892), the United States Supreme Court noted and affirmed the following points as established in Ker v. Illinois, supra, andMahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283
(1888):
 "1. That this court will not interfere to relieve persons who have been arrested and taken by violence from the territory of one State to that of another, where they are held under process legally issued from the courts of the latter State.
 "2. That the question of the applicability of this doctrine to a particular case is as much within the province of a State court, as a question of common law or of the law of nations, as it is of the courts of the United States." Cook v. Hart, 146 U.S. at 192, 13 S.Ct. at 43.
The Supreme Court, in the years following these cases, "has declined to 'retreat from the established rule that illegal arrest or detention does not void a subsequent *Page 115 
conviction.' The result is the same even when the illegality amounted to total avoidance of established extradition procedures in acquiring the presence of the defendant from another country or another state." W. LaFave and J. Israel,Criminal Procedure, § 3.1 at 156. In Frisbie v. Collins,342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952), the Supreme Court stated:
 "This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, [7 S.Ct. 225, 229, 30 L.Ed.2d 421], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."
See also Ex parte Barker, 87 Ala. 4, 6 So. 7 (1889) ("The proposition contended for by the petitioner's counsel may be reduced to this: that the petitioner is entitled to be discharged from custody, and should be allowed reasonable time to make good his escape again from this State, because he was illegally arrested in Georgia and brought into Alabama. This proposition is not sound, and there is an overwhelming array of authority against it." Id. 87 Ala. at 7, 6 So. at 8.
 "[T]here is developing the view that if defendant's presence is acquired by 'government conduct of a most shocking and outrageous character' which was 'perpetrated by representatives of the United States Government,' then due process would bar conviction,' the conduct must be " 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.' " LaFave and Israel, Criminal Procedure, § 3.1 at 156, quoting United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir. 1975), cert. denied, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); United States v. Lira, 515 F.2d 68 (2d Cir. 1975), cert. denied, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The facts of this case do not present government conduct of such an outrageous character."
Furthermore, the following transpired during the cross-examination of the appellant on his motion to dismiss:
"Q: Whose signature is that?
"A: Mine.
 "Q: And I will ask you does that not read, 'I, the undersigned Jimmy Wayne Davis, do hereby freely and voluntarily state I am the identical person against whom charges or criminal proceedings charging me with the commission of a felony have been instituted in the City of Sylacauga, County of Talladega, State of Alabama, without requisition papers, warrants or rendition, or other legal forms or processes, having for their object my return to the aforesaid County and State.
 " 'This agreement and waiver is made by me without reference to my guilt or innocence and shall not be considered in any manner as prejudicial to my case and is not in any sense an admission of guilt. And I further exonerate and hold blameless in this matter, the Sheriff of Clark County, State of Nevada, and all persons acting under him and agree to accompany to the State of Alabama any peace officer who may be sent to take me to said State for trial.
 " 'This statement and waiver, made in duplicate, done in Las Vegas, County of Clark, State of Nevada, this 17th day of September, 1984.'
"A: Yes, sir.
"Q: You signed that; didn't you?
"A: Yes, sir. *Page 116 
 "Q: And it was witnessed by two people; is that correct?
"A: Yes, sir.
 "Q: And then this judge, Michael J. Wendell, District Judge, . . . signed this while you were there, didn't he?
"A: I don't know.
 "Q: In fact, he says right here, 'the above entitled matter having come on regularly for a hearing, Jimmy Wayne Davis, appearing for the purpose of extradition, and the Clark County District Attorney's Office representing the State, the said Jimmy Wayne Davis having been advised of his right to counsel, his right to petition for a writ of habeas corpus, and such other —'
 "[Defense Counsel]: I object, Your Honor; he is reading off of a printed form.
"[Prosecutor]: I'm going to ask him about it.
 "Q: 'And such other matters relative to the demand for his return to face criminal charges in the State of Alabama, County of [Talladega], City of Sylacauga, and it appearing that the said Jimmy Wayne Davis is fully aware of [his] rights and has voluntarily executed in open Court a consent to be returned, without extradition proceedings, to the demanding State;' and that is when you executed this, wasn't it?
"A: I guess.
 "Q: In fact, you didn't ever tell anybody that you didn't want to come back to the State of Alabama? In fact, you were wanting to get back here; isn't that right?
 "[Defense Counsel]: We object to that, what he was wanting to do.
 "Q: Didn't you tell them that you wanted to come back here and waive extradition?
"The Court: Overruled.
"Q: Didn't you tell them that?
"A: Yes, sir."
Thus, the appellant was returned to Alabama because of his voluntary waiver of extradition. In Siegel v. Edwards,566 F.2d 958, 959-60 (5th Cir. 1978), the court stated:
 "Although the extradition papers of which appellant complains were never executed, appellant's return to Louisiana was not the result of those extradition papers. Appellant was returned to Louisiana because of his voluntary waiver of extradition. Once a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him."
Moreover, the trial court did not err in refusing to continue this case until the appellant's witness could attend trial. The trial court did not err in denying the appellant's motion for a continuance in order for the court reporter from Clark County, Nevada, to respond to the issued subpoena duces tecum. The appellant alleged that the court reporter was present during his conversation with the trial court concerning the extradition and, therefore, that the transcripts might reveal that the appellant was not informed of his right to counsel or his right to habeas corpus. However, as stated previously, an improper extradition will not affect his conviction in Alabama.
Furthermore, the record indicates that the trial court carried the case over until the following morning, after the defense counsel made the motion for continuance, and subsequently denied the motion after the defense counsel stated that they were still unable to speak to the prospective witness, but that the witness's secretary indicated that he had not yet even received the subpoena. According to § 12-15-68,Code of Alabama (1975), "[c]ontinuances shall be granted by the court only upon a showing of good cause."
 " 'In general, motions for continuances in criminal cases are matters within the discretion of the trial court. The measure of impropriety which must be shown by an appellant to hold the court in error for denial of a motion for continuance of a criminal trial is gross abuse.' " Frazer v. State, 528 So.2d 1144 (Ala.Cr.App. 1986), quoting Richardson v. State, 476 So.2d 1247
(Ala.Cr.App. 1985). *Page 117 
 III
Although the appellant has not attacked the validity of the sentence imposed upon him, in accordance with our statutory obligation imposed by § 13A-5-53, the record has been reviewed for error involving the conviction and the propriety of the death sentence. We have searched the record for any plain error or defect which might have adversely affected the appellant's substantial rights and have found none. Furthermore, to review the propriety of the sentence, under Gregg v. Georgia,428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), a determination must be made as to "whether the crime was in fact one properly punishable by death, whether similar crimes throughout the state are being punished capitally and whether the sentence of death is appropriate in relation to the particular defendant."Beck v. State, 396 So.2d 645, 664 (Ala. 1980).
A review of the sentence proceedings reveals that the trial court's findings concerning the aggravating and mitigating circumstances are supported by the evidence. The trial court found the existence of one aggravating circumstance; the trial court found that the capital offense was committed while the appellant was engaged in the commission of, or was in an attempt to commit, or was in flight after committing or attempting to commit, a robbery. Section 13A-5-49(4). This aggravating circumstance was inherent in the jury's verdict of guilty as charged. The trial court then found the existence of one mitigating circumstance, that the defendant does not have a significant history of prior criminal activity. Section13A-5-51(1).
There is nothing in the record to indicate that the sentence of death was imposed as the result of passion, prejudice, or any other arbitrary factor. The crime for which the appellant was indicted and convicted is a crime properly punishable by the death sentence and that sentence has been imposed under similar circumstances in previous cases. See, e.g., Magwood v.State, 494 So.2d 124 (Ala.Cr.App. 1985), affirmed, Ex parteMagwood, 494 So.2d 154 (Ala. 1986), cert denied, Magwood v.Alabama, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986),Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), affirmed,431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200,78 L.Ed.2d 175 (1983); Raines v. State, 429 So.2d 1104
(Ala.Cr.App.), affirmed, 429 So.2d 1111 (Ala. 1982) cert. denied, Raines v. Alabama, 460 U.S. 1103, 103 S.Ct. 1804,76 L.Ed.2d 368 (1983); Beck v. State, supra.
The trial court, in weighing the aggravating and mitigating circumstances in this case, found:
 "The State proved beyond a reasonable doubt and to a moral certainty that the defendant committed murder during a robbery in the first degree, or an attempt thereof, committed by the defendant and the Court so finds. The State had proven the defendant guilty of a Capital punishment offense as set out in Section 13A-5-40, being murder by the defendant during a robbery in the first degree or an attempt thereof, committed by the defendant.
 "The defendant offered little evidence of mitigating circumstances as provided in Sections 13A-5-51 nor [sic] 13A-5-52. At the conclusion of the sentence hearing the jury returned a verdict recommending that the defendant be punished by death. The vote was eleven for death and one for life without parole.
 "The Court finds that the conduct of the defendant constituted a brutal, aggravated, merciless, and intentional killing of a woman, and that the recommendation of the jury as to the punishment to be imposed was fully justified by the facts and circumstances of the case and the aggravating circumstances outweigh the mitigating circumstances proved by the defendant."
There is no error in the trial court's determination or in the findings of the jury and the trial court that death is the appropriate sentence in this case.
AFFIRMED.
All the Judges concur. *Page 118