# *Ex parte* Barker.

### *Application for Discharge on Habeas Corpus.*

1. *Fugitives from justice; extradition proceedings, founded on void or defective process.*—A person who was arrested in Georgia, without legal process, or under a void warrant issued by an Alabama magistrate, and delivered, as a fugitive from justice, into the custody of an agent of the State of Alabama, under extradition proceedings instituted after his arrest, can not claim to be discharged from custody on *habeas corpus*, because his arrest was illegal, nor because of defects in the warrant on which the extradition proceedings were based, when it appears that he is held in custody under a *capias* on an indictment since found, for the same offense, and that the executive authorities of Georgia have not complained of the illegal arrest.

APPLICATION by petition on the part of Wm. M. Barker, for the writs of *habeas corpus, certiorari*, and other necessary remedial process, to procure his discharge from the custody of the sheriff and jailer of Elmore county; a discharge having been refused by Hon. WM. A. AUSTIN, the probate judge of said county, to whom the application for a discharge was first made. The petition alleged, and the accompanying exhibits showed, that on the 8th November,

1888, an affidavit was made before Judge Austin, as judge of the County Court, by one F. L. Barker, charging that the petitioner, W. M. Barker, "took and carried away gold and silver coin," of the value of $3,000, the personal property of Isaiah Barker; that a warrant for his arrest was thereupon issued, returnable before the judge of the County Court, to answer a charge of grand larceny; that the petitioner was arrested under this warrant, on the 18th December, 1888, by the sheriff of DeKalb county, Georgia, where he was teaching school, and was delivered, a day or two afterwards, into the custody of A. M. Powell, the sheriff of Elmore county, Alabama, and Ernest McCain, his deputy, as the agents of the State of Alabama, under extradition proceedings instituted against him as a fugitive from justice; that he was brought back by them into Alabama, and lodged in the jail of Elmore county, to answer the charge of grand larceny. The requisition of Governor Seay, of Alabama, on Governor Gordon, of Georgia, was in regular form, and was dated the 19th December. On the 24th December, after the petitioner had been lodged in the jail of Elmore county, an order of commitment was made by Judge Austin, "sitting as committing magistrate on preliminary hearing," which, after reciting that the defendant, on his arraignment charged with the offense of grand larceny, "came into open court, and waives preliminary examination," commanded the jailer to receive and detain him in custody until legally discharged; and the sheriff was authorized, by indorsement on the order, to admit him to bail in the sum of $2,000, conditioned for his appearance at the next term of the Circuit Court. On the 7th March, 1889, a *capias* for his arrest was issued by the clerk of the Circuit Court, which recited that an indictment for grand larceny had been found against him at the Spring term, 1889; and the sheriff returned it executed, "by arresting said defendant, and retaining him in jail."

The petition for *habeas corpus*, addressed to Judge Austin, was filed on the 7th March, 1889. In it the petitioner alleged that he was a citizen of Georgia at the time of his arrest, and was arrested without any legal warrant or process; that the extradition proceedings against him were void, because founded on an affidavit which charged no offense, and because they were instituted after his arrest in Georgia; and that he was still held in custody "under and by virtue of said process and none other." In his return to the writ, the jailer justified under the original warrant of arrest, with

the affidavit on which it was founded, the extradition proceedings, the subsequent order of commitment made by Judge Austin, and the *capias*, which were made exhibits. The original affidavit, as set out in the return, alleged that the money was taken and carried away *feloniously*. The petitioner traversed the return, alleging that the word *feloniously* was not used in the original affidavit, and that he was held in custody solely under and by virtue of the process set out in his petition. On the hearing, March 14th, the solicitor of the circuit intervened in the name of the State, denied that the petitioner was a citizen of Georgia at the time of his arrest, and alleged that he was a citizen of Alabama at the time of the commission of the offense with which he was charged, and was a fugitive from justice from Alabama at the time of his arrest in Georgia. On the evidence adduced, Judge Austin refused to discharge the petitioner; and on these facts he renewed his application to this court.

PARSONS, DARBY & BURNEY, for the petitioner.—The original affidavit, on which the proceedings against the petitioner were founded,.charged no criminal offense.—*Morningstar v. State*, 55 Ala. 148; *McMullen v. State*, 53 Ala. 531; *Williams v. State*, 44 Ala. 396; *Roundtree v. State*, 58 Ala. 381; 1 Hale's P. C. 504; 2 *Ib*. 184. The warrant of arrest, if legal and valid, could have no extra-territorial force or efficacy; and the arrest under it in Georgia, by a sheriff of that State, was a trespass,—a high-handed outrage. But the warrant itself was void, because it was based on an affidavit which charged no offense, and because the officer by whom it was issued had no jurisdiction of felonies.—Code, §§ 4197, 4201, 4204. The extradition proceedings were void, because they were founded on an affidavit which charged no offense, and because it was not made before a proper officer. The extradition of fugitives was once a matter of comity, but now it is a matter of statutory right, and governed entirely by statutory provisions.—U. S. Rev. Statutes, § 5278; *State v. Vanderpool*, 5 Crim. Law Magazine, 50; *Mohr's case*, 73 Ala. 503; Spear on Extradition, 297–8. The extradition proceedings, even if valid and regular on their face, could not justify an illegal arrest, a mere trespass, made or committed before they were instituted; nor can the subsequent judicial proceedings in Alabama be invoked for that purpose. Extradition proceedings are only authorized in specified cases, and intended to secure the

presence of the fugitive to answer the particular charge on which they were instituted. He can not be held, after arrest and surrender, to answer other criminal prosecutions; and this must include judicial proceedings instituted after his arrest.—Spear on Extradition, 72, 570–72, 530; 47 Mich. 481; Whart. Crim. Law, 7th ed., vol. 3, p. 34, § 2956 *a*.

WM. L. MARTIN, Attorney-General, *contra*, cited 51 Amer. Dec. 400; 28 Fed. Rep. 653; 34 *Ib.* 525; *Ker v. People,* 110 Ill. 627; 51 Amer. Rep. 706; 119 U. S. 436; 73 Ala. 503; 9 Wend. 212; 23 Fed. Rep. 32.

SOMERVILLE, J.—The prisoner was arrested in the State of Georgia, without legal process, and was afterwards handed over by the officers of the law in that State into the custody of one McCain, who acted as agent of the State of Alabama, under a warrant issued by the Governor of the latter State under the inter-state extradition laws of the United States. This was done pursuant to a warrant of the Governor of Georgia. These extradition papers are claimed to have been so defective as to confer no jurisdiction on any of the officers, in whose custody the prisoner has been detained.

The return made to the writ of *habeas corpus* by the deputy-sheriff of Elmore county shows that the petitioner was detained in his custody, not only under the authority conferred by these papers, but by virtue of a *capias* issued on an indictment for the offense of grand larceny—the same crime for which he was extradited from the State of Georgia as a fugitive from justice from Alabama.

The proposition contended for by the petitioner's counsel may be reduced to this: that the petitioner is entitled to be discharged from custody, and should be allowed reasonable time to make good his escape again from this State, because he was illegally arrested in Georgia and brought into Alabama.

This proposition is not sound, and there is an overwhelming array of authority against it. We may admit that the affidavit, charging the offense upon which the extradition warrant was based, was fatally defective in omitting the word "feloniously" before the words "took and carried away," which purport to charge the crime of grand larceny, and, for this reason, the affidavit legally charges no crime. And we premise also, that when the affidavit in such cases fails on its

face to state facts which constitute a crime, the defect is jurisdictional, and may be ascertained and declared by the investigating tribunal, on an application for the writ of *habeas corpus.*—U. S. Rev. Stat., § 5278; Spear on Extradition, pp. 471–472, 477, 498, 548; 7 Amer. & Eng. Encyc. Law, 632, 637; *People v. Brady,* 56 N. Y. 182.

So, without affecting the merits of this case, it might be admitted for the sake of argument, as contended, that the judge of the County Court of Elmore county had no authority to issue a warrant for the arrest of a person for a felony— although it is obvious that he is invested by the statute with this authority as a lawful magistrate (Code, 1886, §§ 4255, 4279, 4680); and although "an affidavit made before any magistrate of a State or Territory," certified as authentic by the Governor of the demanding State, is obviously sufficient, if otherwise objectionable, under the Federal statute governing the subject of the extradition of fugitives from justice between the States and Territories.—U. S. Rev. Stat. § 5278; Hurd on Habeas Corpus (2d Ed.), 610.

It nevertheless is true, that the courts of a State will not generally investigate, either on *habeas corpus* proceedings, or on final trial, the mode of the prisoner's capture, whether it was legal or illegal—whether it was under lawful process or without any process at all—where he has fled to another State or country, and been brought again into its jurisdiction. The question is the legality of the prisoner's detention, not the legality of his arrest, unless on the complaint of the Governor of the State whose laws were violated by such unlawful arrest. The person making the arrest may be prosecuted criminally for kidnapping, or be held liable to respond in civil damages for false imprisonment; but the prisoner can not himself claim to be released from any legal process for the *same crime,* under authority of which he may be detained in the custody of the law. In other words, the mere fact that the prisoner, being a fugitive from justice, was kidnapped in another State—to put the case strongly—and was brought into this State, is alone no reason why he should be released, unless the demand for release is made by the Governor, or other executive authority of such foreign State. This is the accepted doctrine of the State and Federal courts, and is founded on an ancient and well settled principle of the common law.—Spear on Extradition, pp. 181, 492, 554; 7 Amer. & Eng. Ency. Law, 643, 653, note; *Matter of Fel-*

*ter,* 57 Amer. Dec. 400, *note,* and cases cited; *Com. v. Shaw,* 6 Crim. Law Mag. (1885), 245.

In *Ex parte Scott,* 9 Barn. & Cress. 446, a case of *habeas corpus,* the prisoner, a female, had been arrested at Brussels, without authority of law, and brought back to England. Lord Tenterden refused to inquire into the circumstances of her arrest, whether legal or illegal, upon its being made to appear that an indictment had been found against her in the proper jurisdiction in England, where the investigation occurred, and the crime was alleged to have been committed. It was not denied, that the foreign country, whose laws may have been violated by the illegal arrest, could vindicate their breach by making demand for the prisoner's return.

In *Dow's case,* 18 Penn. St. 37, the prisoner had escaped from justice in Pennsylvania, and fled to Michigan. He was arrested in the latter State, without legal authority, and brought back to the former State, where a prosecution was pending against him for forgery. He was held not to be entitled to his discharge, his release not being demanded by the executive of Michigan.

In *State v. Brewster,* 7 Vt. 118, where the prisoner had been kidnapped in Canada, and forcibly brought into the State of Vermont, his discharge was refused, and he was held liable to answer an indictment for crime in the latter State.

A like ruling was made in *Ker v. People,* 110 Ill. 627; s. c., 51 Amer. Rep. 706, in the case of one who had been seized by private persons in Peru, without warrant of law, and was brought to California, and from thence to the State of Illinois by process of extradition. The authorities on the subject are ably reviewed in this case by Scott, J.; and the United States Supreme Court, on appeal to that tribunal, declined to disturb the judgment of the Supreme Court of Illinois.—*Ker v. Illinois,* 119 U. S. 436. See, also, Spear on Extradition, 181–186; *Ker's case,* 18 Fed. Rep. 167.

It is not denied that the crime of grand larceny described in the *capias* on the indictment against the prisoner, and under which the sheriff claims to detain him, is the same offense as that intended to be charged in the extradition warrant of the Governor. There can be no serious question, under these circumstances, of the legality of the petitioner's detention under the *capias* on this indictment, irrespective of all other questions discussed in the briefs of counsel.

*Fetter's case*, 23 N. J. Law, 311; s. c., 57 Amer. Dec. 382; 7 Amer. & Eng. Encyc. Law, 627-628.

The application for the writ of *habeas corpus* must be denied.