# Carr v. State.

*Indictment of Banker for receiving Deposit when in Failing or Insolvent Condition.*

1. *Extradition; person extradited for one crime may be indicted and tried for another.*—A fugitive from justice who has been surrendered by one State, upon requisition charging him with the commission of a specific crime, may be indicted and tried in the State to which he is surrendered for any other or different offense from that designated in the requisition, without first being tried on the charge for which he was extradited, or having an opportunity to return to the State from which he was extradited.

2. *Indictment; sufficient description of money.*—An indictment drawn under the act of December 12, 1892, (Acts 1892-93, p. 95), charging the defendant with receiving from another "for deposit, $355, lawful money, currency of the United States of America, a more particular description of said money being unknown to the grand jury," con-

[Carr v. State.]

tains a sufficient description of the money alleged to have been deposited; and is not open to a demurrer on the ground that no value was alleged, and that the indictment failed to allege a deposit of money or thing of value, within the terms of the statute.

3. *Continuance; within the discretion of the trial court.*—The granting of a continuance of a cause is within the discretion of the trial court, and the refusal of the trial court to grant a petition therefor is not revisable on appeal.

4. *Formation of petit jury; examination of proposed juror.*—In a criminal case, after the court has examined a proposed juror, and on his *voir dire* he has been pronounced competent, it is not error for the court to refuse to allow the defendant's counsel to further examine such juror with a view to showing a cause for challenge not brought to light by the statutory interrogatories.

5. *Same; incompetent juror.*—Where, on a trial under an indictment charging a banker with receiving money on deposit, knowing the bank to be insolvent, upon the examination of a proposed juror it is disclosed that he had been a witness before the grand jury in a case against the defendant similar to the one being tried, which was then pending in the court, and that he believes the defendant guilty in such case, and in which, if there was a conviction, he would recover of the defendant the amount of his deposit, such proposed juror is incompetent, and should be challenged for cause.

6. *Banker receiving money on deposit knowing bank to be insolvent; when guilty.*—Under the provisions of the act approved December 12, 1892, (Acts 1892-93, p. 95), making it a misdemeanor for the president, cashier or other officer of a bank to receive, for deposit, any money or other thing of value, knowing at the time that the bank is insolvent, the manager and controlling member of a banking firm, who kept the bank open for business and received deposits in the usual course of its business, knowing the bank to be insolvent, is guilty in respect of a deposit which was received by the acting cashier of the bank, while the manager himself was not present, nor even in the same town, regardless of whether the acting cashier was criminally responsible for his act as agent; a personal, manual receipt of deposits on the part of the manager not being necessary to meet the requirements of the statute.

7. *Same; same.*—In such a case, to authorize a conviction, it is not necessary to show that the defendant, who was the manager of the bank, authorized the acting cashier to receive the deposit in question.

8. *Same; how insolvency was brought about.*—In such a case, it is immaterial whether the bank became insolvent through the misfeasance or malfeasance of the defendant, or through business disasters, for which he was not responsible, or through depreciation in value of the assets of the bank, incident to the general monetary condition of the country; the sole inquiry being as to whether the bank was in an in-

[Carr v. State.]

solvent or failing condition, and the defendant's knowledge or belief thereof, at the time of the receipt of the deposit.

9. *Same; same.*—In such a case, it is likewise immaterial whether the insolvency constituted any inability to pay the depositors or other liabilities, or any inability to pay both depositors and other liabilities.

10. *Same; charge to the jury.*—In such a case, a charge which instructs the jury that if they "believe from the evidence that the act of receiving the deposit was a lawful act, then the defendant is not guilty," is properly refused, since it submits the whole case, both on the law and the facts, to the jury.

11. *Charge to the jury; reasonable doubt.*—In this State a defendant in a criminal case, can not be found guilty, unless the jury believe all the evidence necessary to his conviction beyond a reasonable doubt; and charges to the jury which authorize a conviction upon the mere belief by the jury of facts necessary to make out a case for the State, without regard to their belief beyond a reasonable doubt, are properly refused..

12. *Abstract charges* are always properly refused.

APPEAL from the District Court of Colbert.

Tried before the Hon W. P. CHITWOOD.

The appellant was tried and convicted under the following indictment: "The grand jury of said county charges that before the finding of this indictment Hinton E. Carr, who was at the time the president of the Tuscumbia Banking Company, a banking firm engaged in a banking business, received from Robert T. Abernathy for deposit, three hundred and fifty-five dollars, lawful money currency of the United States of America, a more particular description of said money being unknown to the grand jury, and the said Hinton E. Carr knew at the time said deposit was received, or had good cause to believe, that said banking firm was in a failing or insolvent condition.

"And the grand jury of said county further charge that before the finding of this indictment Hinton E. Carr, who was at the time a member of the firm styled the Tuscumbia Banking Company, a partnership composed of Hinton E. Carr and Emma Carr, which firm or partnership was engaged in the banking business, received for deposit from Robert T. Abernathy three hundred and fifty-five dollars, lawful money currency of the United States of America, a more particular description of said money being unknown to the grand jury, and the said Hinton E. Carr knew at the time said deposit was

[Carr v. State.]

received, or had good cause to believe, that the said firm or partnership was in a failing or insolvent condition, against the peace," &c.

The defendant pleaded the following plea in abatement: "Comes the defendant, Hinton E. Carr, and pleads to the jurisdiction of the court in this cause, and objects to his being put upon his trial, because he says, that he was, on the 7th day of August, 1893, and previous thereto, in the State of Iowa, and had gone there for the purpose and intent of making his home in said State; that while there he was arrested and was by order of the Governor of said State extradited to the State of Alabama for the charge of embezzlement, and not for the offense set out in the indictment in this cause, which original warrant of extradition issued by said Governor of the State of Iowa is made a part of this plea. And he alleges that he was a resident of said State of Iowa when said warrant of extradition was granted, wherefore he prays that said indictment be abated, and he further prays that he not be placed upon trial upon the same. He further pleads to the jurisdiction of this court in the premises. And he insists and pleads that he can be only tried for the offense upon which he was extradited, and he alleges and states that he was not extradited for the offense as charged herein." To this plea the State replied, that, after the defendant was brought to the State of Alabama, the indictment in the present case was found by the grand jury of Colbert county, Alabama, and the defendant was arrested in the State of Alabama upon the writ of arrest issued upon said indictment; and further, that, because the defendant was extradited for one offense, does not preclude his prosecution for any other offense the defendant may have committed in this State. The plea in abatement was overruled and disallowed, and the defendant then demurred to the indictment, and, upon this demurrer being overruled, the defendant moved the court for a continuance, on the ground that he had been extradited for an offense different from the one for which he was now indicted, and was, therefore, taken by surprise, and had not had an opportunity to prepare a defense to the present indictment, which he could do if the continuance was granted and time allowed him; and that he had a good and valid defense to the present prosecution. The court

overruled this motion for a continuance, and the defendant duly excepted.

On impannelling the jury for the trial of the defendant, the court asked the usual questions as to qualification. The defendant, by leave of the court, examined one August Neff, who said he had been a witness before the grand jury in a similar case to this, and had a like case now pending in the same court against the defendant, and believed that the defendant was guilty in the case in which he was a witness. The defendant objected to the juror as being incompetent, and challenged him for cause. The court overruled the objection, and putting the juror upon the defendant he challenged him peremptorily. To this action of the court the defendant duly excepted. "The defendant then asked the court leave to examine any juror upon his *voire dire* as to his fixed opinion, and to show if he had a like case pending in this court and against this defendant." The court refused to allow defendant to ask the jurors such questions upon their *voire dire*, and the defendant duly excepted.

The testimony for the State tended to show that one R. T. Abernathy, Jr., had, at the direction of his father, deposited in the Tuscumbia Banking Company, a firm composed of the defendant and his wife, $355; that Birt Harrington was the assistant cashier and received the money, and that the money had never been paid back to the said R. T. Abernathy, Sr.; that the bank failed June 8, 1893, a short time after the deposit of said amount was made, which was on May 5th, 1893. The defendant moved to exclude this testimony, on the ground that it showed the deposit was made with "The Tuscumbia Banking Company," and not with the defendant as charged in the indictment. This motion was overruled and the defendant duly excepted. The State also introduced evidence tending to show that the said Birt Harrington was regularly employed as assistant cashier of the Tuscumbia Banking Company, and had authority to receive deposits. The other facts are sufficiently stated in the opinion.

The court at the request of the State gave to the jury the following written charges: (1.) "If the jury believe from the evidence that the defendant was, on the 5th day of May, 1893, engaged in a banking business in Colbert county, Alabama, under the firm name and style

[Carr v. State.]

of Tuscumbia Banking Company, and that the said
Banking Company was a partnership composed of the
defendant and his wife, Emma Carr, and that the said
Banking Company was at said time insolvent, or in a
failing condition, and defendant knew, or had good cause
to believe it, and employed Birt Harrington to act as as-
sistant cashier of the bank, and made it his duty to re-
ceive deposits, and that he, Harrington, did receive
$355.00 from R. T. Abernathy on deposit on the 5th day
of May, 1893, then you should find the defendant
guilty." (2.) "If the jury believe from the evidence
that the Tuscumbia Banking Company, composed of de-
fendant and his wife, was, on the 5th day of May, 1893,
doing a banking business, that said Tuscumbia Banking
Company had in its employ Birt Harrington, whose duty
it was to receive deposits, and believe further that said
Tuscumbia Banking Company was, on the 5th day of
May, 1893, in a failing or insolvent condition, and that
defendant knew, or had good cause to believe, it was in a
failing or insolvent condition, and further believe that
on the 5th day of May, 1893, Birt Harrington in the em-
ploy of defendant received from R. T. Abernathy $355.00
on deposit, then the jury should find the defendant
guilty as charged in the indictment." To the giving of
each of these charges the defendant separately excepted,
and likewise separately excepted to the court's refusal to
give each of the following, among other, charges re-
quested by him in writing : (2.) "If the jury believe
from the evidence that Birt Harrington received the de-
posit from Abernathy without instructions from Carr,
then they must find for the defendant." (3.) "Unless
the jury are satisfied beyond a reasonable doubt from the
evidence that Carr authorized or directed Harrington, or
had knowledge of Harrington receiving the deposit made
by Abernathy, then they must find for the defendant."
(5.) "If the jury believe from the evidence that the as-
sets of the bank became so depreciated in value as to
cause the failure of the bank, and that it was not the
acts of Carr, then they must find for the defendant."
(6.) "Unless the jury are satisfied beyond a reasonable
doubt that the defendant intended to defraud the de-
positors, and that it was not through depreciation of
value of assets that the bank failed, then they must find
for the defendant." (8.) "If the jury believe from the

evidence that Carr or the bank's credit was good on 5th of May, and so continued till 8th of June, and that depreciated assets caused during that time its failure, then they will find for the defendant." (9.) "If the jury believe from the evidence that the failure of the bank [was] not through fault of Carr, then they will find for the defendant." (10.) "Unless the jury are satisfied beyond a reasonable doubt that when this deposit was made, that Carr knew the bank was in failing circumstances, and that Carr intended to injure, defraud, or apply the money to his own use, then the jury will find for the defendant." (12.) "If the jury believe from the evidence that Harrington received the deposit made by Abernathy in Carr's absence and without Carr's knowledge or instructions to do so, then they must find for the defendant." (15.) "If the jury believe from the evidence that if property around and about the bank and its proximity had not depreciated so, that then this suit would not have been instituted, then they must find for defendant." (16.) "Before the jury can convict, they must find from the evidence, beyond a reasonable doubt, that Carr knew the bank was in failing circumstances when the deposit was made. That he must have received the deposit in person, or have authorized or directed Harrington to receive it, and that it was done by and with Carr's consent and knowledge." (17.) "The jury must be satisfied from the evidence beyond a reasonable doubt that Carr must have authorized the receipt of the money deposited, or he must have been present, and he also must have known the bank was in failing circumstances before they can find the defendant guilty." (19.) "Before the jury can convict in this case they must be satisfied beyond a reasonable doubt that Carr knew of the failing condition of the bank at the time of the deposit. That he received the deposit himself, or authorized or directed or knew of it when done." (23.) "Before the jury can convict in this cause, they must be satisfied beyond a reasonable doubt that the defendant knew, at the time of the receipt of the money, of its receipt, and that the defendant knew or had good cause to believe the bank to be in a failing or insolvent condition, and knew of the receipt of the deposit." (27.) "If the Tuscumbia Banking Company failed on account of depreciation of the bank's

[Carr v. State.]

property and assets, after the deposit was made by Abernathy, then the jury must find for the defendant." (31.) "If the jury believe from the evidence that the deposits made in the bank were invested in property and loans, an ordinary way of banking, and that the property and lands have so failed and depreciated since Abernathy's deposit that money could not be realized on them to satisfy the depositors, then the jury must find for the defendant." (33.) "The State must prove to your satisfaction beyond all reasonable doubt that Carr received the deposit of Dr. R. T. Abernathy." (35.) "Unless the jury believe from the evidence beyond all reasonable doubt that Carr knew of the receipt of the deposit of $355.00, or assented to it, or authorized its receipt, then they will find the defendant not guilty." (36.) "Unless the evidence satisfies the minds of the jury beyond all reasonable doubt that Carr knew of the deposit at the time of its reception, then they will find the defendant not guilty." (37.) "Unless the evidence satisfies the minds of the jury beyond all reasonable doubt that Carr authorized Harrington to receive the deposit of $355.00 from R. T. Abernathy, then they will find the defendant not guilty." (39.) "Unless the evidence satisfies the jury beyond all reasonable doubt that the defendant was present at the time, controlling and managing the bank when the deposit was received by Harrington, then they will find the defendant not guilty." (41.) "The jury must believe from the evidence beyond all reasonable doubt that Carr received from Robert T. Abernathy for deposit, three hundred and fifty-five dollars, and further, that defendant knew at the time said deposit was received, or had good cause to believe, that the Tuscumbia Banking Co. was in a failing condition, before they can find him guilty." (42.) "Gentlemen of the jury, the defendant can not be convicted unless the evidence satisfies your minds beyond all reasonable doubt that Carr procured, counselled, or commanded Harrington to receive the deposit of Dr. Abernathy, and if the State has so failed to prove it to your satisfaction beyond all reasonable doubt, then you will find the defendant not guilty."

JACKSON, ORME & COOPER, and ASA E. STRATTON, for appellant.—1. The plea to the jurisdiction of the court

should have been sustained. Jurisdiction is the power to hear and determine a cause.—*Woodruff v. Stewart*, 63 Ala. 206. The court must have jurisdiction of the person in criminal proceedings.—*Smith v. State*, 55 Ala. 59. The defendant was in the State of Iowa, out of the jurisdiction of this court. The original warrant, issued by the Governor of Iowa, upon which the defendant was arrested on affidavit for embezzlement, and extradited and brought back to the State of Alabama, was issued in good faith, and comity between the States, by virtue of which the district court of Colbert county was clothed with jurisdiction, required that the defendant had a right to first be tried on that charge, before being tried for an offense for which he was not extradited.—*Ex parte Mc-Knight*, 48 Ohio St. Rep. 588 ; 7 Amer. & Eng. Encyc. of Law, 648, § 28, and note 2.

2. The demurrer to the indictment was well taken. Acts. 1892-93, p. 95 ; *Grant v. State*, 44 Ala. 496 ; *Duvall v. The State*, 63 Ala. 12 ; *DuBois v. State*, 50 Ala. 139.

3. The court erred in overruling the motion for a continuance.—7 Amer. & Eng. Encyc. of Law, 648, § 28, note 2.

4. The court erred in refusing to allow the defendant to challenge the juror Neff for cause, under section 4331.—*Smith's Case*, 55 Ala. 1.

5. The court erred in giving the charges one and two asked by the prosecution. Each charge omitted the clause "beyond a reasonable doubt."—*Pierson v. State*, 99 Ala. 148 ; *Rhea v. State*, 100 Ala. 119.

WM. L. MARTIN, Attorney-General, and THOS. R. ROULHAC, for the State.—1. The plea to the jurisdiction of the court was properly overruled. The fact that the defendant had been brought back from the State of Iowa under extradition proceedings, afforded him no immunity from trial and punishment for other crimes committed in this State.—*Lascelles v. Georgia*, 148 U. S. 537 ; *Ex parte Barker*, 87 Ala. 4. Being within the jurisdiction of the court as to each and all the charges pending against him, it rested in the discretion of the court as to which indictment the defendant should be first tried upon.

2. To open a bank is to invite deposits. When the defendant kept open his insolvent bank, he thereby invited the public to entrust their money to the keeping of

[Carr v. State.]

this bank; and when the public have been caught in the
snare he can not be heard to say that he did not, in per-
son, participate in the fraud.    The act of his agent in
receiving a deposit, under such circumstances, was his
act, regardless of whether the agent knew of or had good
cause to know the true condition of the bank.    A person
may commit crime through the instrumentality of an
innocent agent.—1 Whar. Cr. Law, (9th Ed.), § 246.
The receipt of the deposit being in the usual course of
the banking business, which was being carried on by the
authority of the defendant, his criminal responsibility
necessarily follows.—1 Whar. Cr. Law, § 247; 2 *Ib.*
§ 1503; *State v. Caldwell,* 79 Iowa, 432; *Reeves v. State,* 95
Ala. 31.

McCLELLAN, J.—There has been some conflict in the
adjudged cases, but it may now well be considered as
settled by the numerical and intrinsic weight of the de-
cisions in other States, by an adjudication of this court,
by the unanswerable argument of Mr. Moore in his work
on Extradition and Inter-State Rendition, and finally by
the Supreme Court of the United States, that a fugitive
from justice who has been surrendered by one State of
the Union to another State, upon requisition charging
him with the commission of a specific crime, has, under
the constitution and law of the United States, no right,
privilege or immunity to be exempt from indictment and
trial, in the State to which he is surrendered, for any
other or different offense from that designated in the re-
quisition without first being tried on the charge for
which he was extradited, or having an opportunity to
return to the State from which he was extradited.—*In
re Noyes,* 17 Albany L. J., 407; *Ham v. State,* 4 Tex. Ap.
645; *State ex rel. Brown v. Stewart,* 60 Wis. 587; *Post v.
Cross,* 135 N. Y. 536; *Commonwealth v. Wright,* 33 N. E.
Rep. 82; *In re Miles,* 52 Vt. 609; *Ex parte Barker,* 87 Ala.
4; 2 Moore on Extradition, §§ 642, 643, 644; *Lascelles v.
Georgia,* 148 U. S. 537.

The trial court did not err, therefore, in putting the
defendant on trial in this case, notwithstanding the fact—
presented by plea and otherwise—that he had been sur-
rendered by the State of Iowa on another and different
charge upon which he had not been tried and was still
being held.

The indictment in this case is drawn under, and pursues the language of, the act of December 12, 1892, "To prevent banks, bankers, firms, corporations, or other persons from receiving deposits of bank notes, specie money or other thing of value, when in a failing or insolvent condition," and, averring that the defendant received from "Robert T. Abernathy for deposit three hundred and fifty-five dollars, lawful money, currency of the United States of America, a more particular description of said money being unknown to the grand jury," &c., &c., it was not open to the demurrers interposed by the defendant which proceeded on the grounds that no value was alleged, and that the indictment failed to allege a deposit of money or thing of value within the terms of the statute. The demurrer was properly overruled.— *DuBois v. State*, 50 Ala. 139 ; *Duvall v. State*, 63 Ala. 12.

The action of the trial court in denying a continuance of the case, as has long been well established, is not revisable by this court.—*A. G. S. R. R. Co. v. Hill*, 90 Ala. 71 ; s. c. 93 Ala. 514 ; *Walker v. State*, 91 Ala. 76.

The court erred in putting the juror Neff on the defendant. It is quite true that the court was under no duty to allow the defendant to further examine this juror, after his competency had been pronounced on the *voir dire*, with a view to showing a cause for challenge not brought to light by statutory interrogatories ; and hence it is that no error was committed in refusing to allow such further examination in respect of other jurors.—*Bales v. State*, 63 Ala. 30 ; 12 Amer. & Eng. Encyc. of Law, p. 358 ; *Hawes v. State*, 88 Ala. 37, 66 ; *Lundy v. State*, 91 Ala. 100. But the trial judge did permit this examination in reference to Neff, and it was developed thereby that he had been a witness before the grand jury in a case against the defendant similar to this and had a like case to this—that is, a prosecution against the defendant for receiving from him, Neff, money on deposit after the defendant knew or had good reason to believe his bank was insolvent or in a failing condition—then pending in the court, and that he believed that defendant was guilty in that case in which he, the juror, was a witness, and in which, if there was a conviction, Neff would recover, by way of a fine, the amount of his deposit. It can not be conceived on this state of facts that Neff could have been such im-

partial juror as the constitution guaranteed to the defendant in respect of the main issue common to both cases, namely, whether when the deposits were received the defendant knew or had good reason to believe the banking partnership of which he was a member was in a failing or insolvent condition. The juror should have been discharged on the defendant's challenge for cause. 12 Amer. & Eng. Encyc. of Law, pp. 350 *et seq; Smith v. State*, 55 Ala. 1.

The body of the statute, (Acts of 1892–93, p. 95), under which this indictment was found is in the following language : ''Section 1. *Be it enacted by the General Assembly of Alabama,* That any president, cashier or other officer, by whatever title he may be called or known, of any bank, banking firm or corporation engaged in a banking business, or any other person or persons, engaged in said business, or the agent or agents thereof, who shall receive for deposit any bank notes, specie money or other thing of value, knowing at the time said deposit is received, or having good cause to believe, that such bank, banking firm, corporation, person or persons, are in a failing or insolvent condition, shall for each offense be deemed guilty of a misdemeanor, and on conviction thereof, be fined not less than double the amount of said deposit.

''Sec. 2. *Be it further enacted,* That in all convictions under this act, the fine shall be paid in lawful money of the United States only, one-half of which shall go to the person who made the deposit.

''Sec. 3. *Be it further enacted,* That the payment back to the depositor of the bank-notes, specie money or other thing of value, deposited before the conviction hereunder, and the court costs thereof, which may have accumulated, shall be a good and lawful defense to any prosecution under this act.''

The evidence showed that defendant and his wife, as partners, carried on a banking business in Colbert county, Ala., under the name and style of ''Tuscumbia Banking Company;'' that the defendant was the managing and controlling member of said firm, and that one Harrington was the agent of said firm, and acting cashier and book-keeper thereof, at the time the deposit involved here was made. It was also made to appear that on the day said deposit was made the defendant was away from

Tuscumbia, the town where the business was being carried on, and that the deposit was received by said Harrington for the Tuscumbia Banking Company. On these facts it is contended by the defendant, through objections to and motions to exclude testimony and requests for instructions, that he did not receive the deposit alleged in the indictment, and should be acquitted on the uncontroverted evidence; the theory of the defense in this regard being that no other than a direct, personal, manual receipt of deposits can fill the terms of the enactment. There is nothing in this position. The defendant, as a member and manager of the firm called the Tuscumbia Banking Company, carried on the business of banking at Tuscumbia; he thereby, so long as the bank was kept open, invited the public, and Robert J. Abernathy as one of the public, to make deposits with said firm; whether present or absent personally, he provided means for the acceptance of this invitation, by the employment of Harrington to take possession of deposits tendered in consequence of it for him, and the act of Harrington in so doing is his act as fully in every sense as if he had performed it by his own hands; and this wholly regardless of all considerations as to whether Harrington himself might be held in criminal responsibility for his act as agent. The receipt of the deposit was in the usual course of the business, which the defendant carried on and kept open for the very purpose, among others perhaps, of receiving on deposit the funds of other persons, and no matter what agencies he employed he is guilty under the statute if he at the time knew, or had good cause to believe, that the Tuscumbia Banking Company was in a failing or insolvent condition.— 1 Morse on Banks & Banking, § 178; 1 Whart. Cr. Law, § 247; 2 Ib. § 1503; State v. Caldwell et al., 79 Iowa, 432. And equally untenable is the position, advanced in objections and requests for charges, that the defendant could not be convicted because the business was conducted under the name of the Tuscumbia Banking Co., or as a firm.

Several of the charges requested were to the effect that Carr could not be convicted unless he authorized Harrington to receive this deposit from Abernathy. Of course it was essential that Harrington should be shown to have acted in the matter by authority of the firm or

[Carr v. State.]

Carr; but it was by no means necessary to show that he had any specific authority to receive this particular deposit, as the manifest tendency of these charges was to induce the jury to conclude. They were, therefore, obviously misleading.

It is wholly immaterial under this indictment how the Tuscumbia Banking Company came to be in a failing or insolvent condition—whether through the misfeasance or malfeasance of the defendant, or through business disasters involving nothing reprehensible on his part, or through depreciation in value of assets incident to the general monetary condition of the country. The point of sole inquiry is as to the fact of insolvency or "failing and insolvent condition," and the defendant's knowledge thereof, or his having good reason to so believe, at the time of deposit made. And it is obviously also beyond the issue whether the insolvency consists in inability to pay depositors only or to pay other liabilities, or other liabilities and depositors. These considerations dispose of the exceptions reserved to the refusal of the trial court to give many of the charges requested by the defendant.

Of course, if the insolvency of the banking company resulted from the depreciation of property *after* the alleged deposit was made, the defendant could not be convicted of receiving the deposit; the statute has reference to a failing or insolvent condition existing *at the time* when the deposit is made. But the charges requested on this point were properly refused because there was no evidence that the insolvency, if it existed at all, resulted from depreciation of property subsequent to Abernathy's deposit; they were abstract.

Charge 32 requested by the defendant, to-wit, "If the jury believe from the evidence that the act of receiving the deposit of $355.00 was a lawful act, then the defendant is not guilty," submits the whole case both on the law and the facts to the jury. In our jurisprudence juries are not the judges and triers of the law, but of the facts only.

Two charges were given at the request of the State, and each of them is patently bad under the decisions of this court, in that they severally authorize a conviction upon the mere belief by the jury of the facts necessary to make out the case for the State without regard to the degree of their belief, i. e., whether they so believe be-

2

yond a reasonable doubt.—*Pierson v. State*, 99 Ala. 148; *Rhea v. State*, 100 Ala. 119.

If there was error in allowing the witness Harrington to testify that Mrs. Carr signed the name "Tuscumbia Banking Company" to the deed of assignment of June 10, 1893, instead of calling an attesting witness to that signature, or in allowing the witness Sampson to depose to the contents of the mortgage covering the bank building without introducing the probated mortgage, the error was cured in the first case by subsequent proof by an attesting witness of the execution of the assignment and the introduction of the deed in evidence, and in the other case, by the subsequent introduction of the acknowledged and recorded mortgage.

Some other exceptions to the rulings of the court on the admission of testimony and in respect of charges requested by the defendant are presented by this record, but they are so patently without merit we do not consider it necessary to discuss them.

For the errors which we have pointed out, the judgment must be reversed. The cause will be remanded.

Reversed and remanded.