EATON v. STATE OF WEST VIRGINIA.

(Circuit Court of Appeals, Fourth Circuit. November 16, 1898.)

No. 282.

1. EXTRADITION—FACTS PRESUMED FROM ISSUANCE OF WARRANT.
    The action of the governor of a state in issuing a warrant for the surrender of an alleged fugitive from justice to the authorities of another state upon a requisition from the governor of such state is presumptive proof that the person named was in fact a fugitive from the justice of the state making the requisition.
2. HABEAS CORPUS—FEDERAL COURTS—REVIEW OF QUESTIONS DETERMINED BY STATE COURT.
    A federal court will not, on the hearing of a writ of habeas corpus procured by a defendant after his trial and conviction of a crime in a state court, review the question of the legality of his extradition, his contention being based on alleged facts presented to the state court on his trial, and determined adversely to him.
3. SAME—DISCRETION OF FEDERAL COURTS.
    A federal court will not, unless under exceptional circumstances, release a prisoner from the custody of state authorities on a writ of habeas corpus after his trial and conviction of a crime in a state court, on the ground that he was convicted in violation of his constitutional rights, but will leave him to his remedy by appeal to the supreme court of the state, and then, if aggrieved, to the United States supreme court.[1]

In Error to the Circuit Court of the United States for the District of West Virginia.

[1] On this point, see note to In re Huse, 25 C. C. A. 22, § 17.

A writ of habeas corpus was granted by a judge of the circuit court on the petition of William Eaton to inquire into the legality of his detention by the authorities of West Virginia. From a judgment remanding the petitioner to the custody of the state officers, he brings error.

W. W. Arnett, for plaintiff in error.

John A. Howard and Frank W. Nesbitt, for the State of West Virginia.

Before SIMONTON, Circuit Judge, and PAUL and WADDILL, District Judges.

WADDILL, District Judge. This case comes before us upon a writ of error to a judgment of the circuit court of the United States for the district of West Virginia, rendered on the 14th day of April, 1898, declining to release the plaintiff in error from the custody of the sheriff of Ohio county, in said state, pursuant to a writ of habeas corpus theretofore regularly awarded by one of the judges of said court.

The petition for a writ of habeas corpus, duly sworn to, was filed October 1, 1897, and is as follows:

"Your petitioner, William Eaton, respectfully states to your honor that he is 'detained, confined, and restrained of his liberty' by J. C. Richards, sheriff of Ohio county, West Virginia, in the jail of said county, at Wheeling, West Virginia, 'without authority of law,' as also 'without due process of law.' He further represents, states, and avers that he is a citizen of the city of Chicago, in the state of Illinois; that he was brought to West Virginia in compliance with a mandate or warrant issued by the governor of Illinois, in obedience to a requisition issued by the chief executive of the state of West Virginia, on a charge of being a 'fugitive from justice' on account of the crime being alleged against him, your petitioner, with having set fire to certain articles, at the time of the fire insured, with intent to defraud and injure the 'Philadelphia Fire Association.' Further, petitioner positively affirms and emphatically declares that he was not, at the time of said alleged fire or burning, within the limits of the state of West Virginia. Wherefore, your petitioner prays your honor to grant him the writ of habeas corpus ad subjiciendum, that the cause of his detention and confinement may be inquired into; and your petitioner prays that he may be discharged and released from the detention, confinement and restraint of his liberty 'without due process of law,' and without authority of law, as aforesaid. And your petitioner will ever pray," etc.

Upon this petition, his honor, Judge Jackson, awarded the writ, making it returnable before the circuit court of the United States for said district on the 12th day of October, 1897, and the same was duly issued, and on the day of its return the sheriff made, under oath, the following response:

"H. C. Richards, sheriff of Ohio county, West Virginia, makes return to the writ of habeas corpus issued by the Honorable John J. Jackson, judge of said court, on the 1st day of October, 1897, and for answer thereto says: He now brings the body of the said William Eaton into court here, and says it is not true, as alleged in the petition, that the said Eaton is detained, confined, and restrained of his liberty without authority of law, or without due process of law; but this respondent says he detains the said William Eaton by the authority of certain orders of the criminal court of Ohio county, West Virginia, which court is a court of record, and of competent general criminal jurisdiction in the county of Ohio and state of West Virginia. A duly-certified copy of the said orders of the said court is hereto annexed, marked 'Exhibit

A of Sheriff's Return,' and is intended to be read as part of this return as fully as if herein set forth. And, now, having made full and complete return to the said writ, this respondent prays that the said William Eaton be remanded to his custody, in the jail of Ohio county, that the writ be dismissed, and that this respondent be allowed his costs in this behalf expended."

Exhibit A, referred to in the sheriff's return, contained the record and proceedings of the criminal court of Ohio county, W. Va., showing the indictment, trial, and conviction of the petitioner, and his sentence to 10 years' imprisonment in the state penitentiary of that state, for the offense for which he was extradited, and that he was indicted on the 3d of May, 1897, and convicted on the 25th of September, 1897, five days before the filing of the petition for a habeas corpus. In response to this return, the plaintiff in error here, under oath, filed the following answer:

"Petitioner, William Eaton, for answer to return made by H. C. Richards to the writ of habeas corpus, says, notwithstanding the return, that he (petitioner Eaton) is held in custody under the judgment or sentence of conviction of the criminal court of Ohio county, West Virginia; says that said judgment or sentence is not operative and valid against him, petitioner, because he says that said court got control of his person otherwise than 'by due process of law,' in this, to wit: 1. He (petitioner) was prevented, when arrested in Chicago by the agent of West Virginia, from showing by writ of habeas corpus, which he requested permission to do, that he was not in West Virginia when the offense with which he was charged was committed, and because as a fact he was not in the state of West Virginia when said crime was committed, and this he is ready to verify. Wherefore petitioner says such judgment is invalid."

Whereupon the court, on said 12th day of October, 1897, after reciting that the body of the petitioner had been brought before it, and the return to said writ duly made, and that said court had partly heard and considered the questions involved in the case, and that it was suggested that there was certain evidence which it was necessary to produce for a full disposition of the case, ordered that the petitioner be remanded to the custody of the said sheriff, to be held and detained by him until the final hearing of the questions arising upon said application. No further order seems to have been entered, or proceedings had, in the case until the entry of the final order complained of on the 14th of April, 1898.

Upon this statement of the proceedings, it would appear that the lower court had before it only the petition, the officer's return to the writ, with the exhibit therewith, and a reply to the officer by the plaintiff in error. Certainly this is all that the record, as presented to us, shows, and upon such showing we would be clearly justified in affirming the action of the lower court without going further. This, however, we have determined not to do, as the case is an important one, involving the liberty of a citizen; and from the admissions of counsel in argument it seems that other evidence was adduced before the lower court. The plaintiff in error avers in his petition that he "is detained, confined, and restrained of his liberty by H. C. Richards, sheriff of Ohio county, West Virginia, without authority of law," also "without due process of law," and that he is a citizen of the state of Illinois, and was brought hither from said state as a "fugitive from justice," pursuant to a warrant issued by the governor of Illi-

nois in obedience to a requisition issued by the chief executive of the state of West Virginia, charged with setting fire to certain property in order to secure the insurance thereon in the state of West Virginia. And the said petitioner avers and declares that he was not, at the time of the alleged fire, within the limits of the state of West Virginia. In the answer to the officer's return, filed as aforesaid, petitioner further avers that the judgment and sentence of the criminal court of Ohio county, W. Va., under which he is held, is not operative and valid against him, because the court got control of his person otherwise than by "due process of law," in this, to wit: That he (petitioner) was prevented, when arrested in Chicago by the agent of West Virginia, from suing out a writ of habeas corpus, which he requested permission to do; that he was not in West Virginia when the offense of which he was charged was committed; and that he was not, as a matter of fact, within said state.

We will first consider the legality of the extradition proceedings, whereby petitioner was removed from the state of Illinois to the state of West Virginia for trial. The provision of the constitution of the United States, article 4, § 2, cl. 2, declares that "a person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the cause." Pursuant to this clause of the constitution, congress, by act of 1793 (1 Stat. 302), provided for the extradition of criminals from one state to another, which act has since been continued in force, and now constitutes sections 5278 and 5279 of the Revised Statutes. In considering this clause of the constitution and the act aforesaid, Chief Justice Taney, in Kentucky v. Denison, 24 How. 66, 104, said:

"The regulations necessary to carry this compact into execution, from the nature of the duty and the object in view, was manifestly devolved upon congress; for. if it was left to the states, each state might require different proof to authenticate the judicial proceedings upon which the demand was founded."

Under the act of congress (section 5278) it is the duty of the executive authority of the state to which a person has fled to cause the arrest of the alleged fugitive from justice when the executive authority of any state demands such fugitive, and produces a copy of an indictment found or affidavit made before a magistrate of any state, charging the person demanded with having committed a crime therein, certified as authentic by the governor or chief executive of the state from whence the person so charged has fled. The question of what must appear to the governor of a state upon whom a demand for a fugitive is made, and just what is the effect of the governor's acts on such demand, has frequently been under review by the supreme court of the United States; and that court, speaking through Mr. Justice Matthews, in the comparatively recent case of Roberts v. Reilly, 116 U. S. 95, 6 Sup. Ct. 291, says:

"It must appear, therefore, to the governor of the state to whom such a demand is presented, before he can lawfully comply with it—First, that the person demanded is substantially charged with a crime against the laws of the

state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the state making the demand; and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open, upon the face of the papers, to judicial inquiry, on an application for a discharge under a writ of habeas corpus. The second is a question of fact, which the governor of the state upon whom the demand is made must decide upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."

Now, assuming that the action of the executive of the state of Illinois can be reviewed upon the question of fact before him of whether the petitioner was a fugitive from justice, can we say that he was not? The petitioner avers that "he was brought to West Virginia in compliance with a mandate or warrant issued by the governor of Illinois in obedience to a requisition issued by the chief executive of the state of West Virginia." The action of the executive of the state of Illinois, at least until shown to be illegal or irregular, must be presumed to be correct, as it must also be presumed that he had before him the necessary facts to justify the action taken. The record shows that the petitioner had been regularly indicted in the state of West Virginia for the offense for which he was extradited; and that fact, together with the action of the governor of Illinois ordering his removal, and his failure even to aver that it was made known to the governor that he claimed not to have been in the state of West Virginia at the time of the commission of the alleged offense, is, we think, conclusive on the question of the legality of the action of the executive of the state of Illinois; and our conclusion is that the petitioner was lawfully committed to the authorities of the state of West Virginia to be removed to the said state to answer of and concerning the crime alleged against him, and that he is not, on that account, held either contrary to law or without due process of law.

We will now consider the question raised that petitioner is restrained of his liberty without "due process of law," and "contrary to law," because the court illegally obtained control of his person by reason of the officer of the state of West Virginia refusing, at the time of his arrest in the city of Chicago, to allow him to procure a writ of habeas corpus, and, at the same time, will review the facts in the case, and determine whether the court in this proceeding should discharge petitioner because of alleged irregularity in the extradition proceedings aforesaid. It will be observed, in considering the first of these questions, that we are dealing with the action of a court after the trial and conviction of one accused of a crime, not on account of any alleged error committed during the trial, but because the prisoner was illegally arrested and brought into court to stand his trial. We cannot see our way clear to interfere by habeas corpus in such a case, under the circumstances here; and so far as the action of the officer of the state of West Virginia at the time of the

arrest of the petitioner is concerned, in not allowing him to sue out a writ of habeas corpus, it is to be determined upon a consideration of the facts of the case, and it is but fair to say that it was admitted in argument that the officer under oath expressly denied this allegation of the petitioner, and also that any such request was made of him, and petitioner introduced no evidence to sustain his statement. Upon the facts of the case it is equally clear to us that this court should not grant the relief prayed for. The record is incomplete in not showing just what evidence was before the lower court, but, waiving this defect, and dealing with the facts as conceded in argument, it seems that the state at the trial, among other things, established that the fire was started by means of a time fuse and naphtha, or gasoline, bomb, ignited hours before the actual conflagration in the early morning—about 2 a. m.—of the 26th of February, 1897; that petitioner was seen in the city of Wheeling on the evening of the 25th of February; that he entered his store, and closed the door behind him; that he was the only person who had access to the said store; that the stock of goods in the store was worth but little, and insured for $7,500; that petitioner left Wheeling on the evening of the 25th of February, and had ample time to reach Pittsburg, which, by rail, was about $2\frac{1}{2}$ hours' ride, having, as the state claimed, previously set fire to the fuse referred to. Petitioner, on the other hand, introduced evidence to show his presence in Pittsburg at the time the fire actually occurred, though he acknowledged that on the evening of the 25th of February he was in the suburbs of Wheeling, connected by a street-car line with the city. This seems to have been substantially the contention of the parties. The opinion of the lower court, copied in the record, shows that the whole question of the presence of the prisoner at the scene of the crime was submitted to the jury and the trial court on the merits of the case, when petitioner was found guilty of the crime alleged against him, and sentenced to 10 years' imprisonment in the penitentiary. We cannot say, from anything before us, that petitioner was not in the city of Wheeling at the time the incendiary fire originated. Certain it is, actual presence in Pittsburg when the fire occurred is not necessarily inconsistent with causing and starting the fire, if it originated as claimed by the state. The jury and the local court heard this evidence, and decided that the petitioner was guilty of setting fire to the property burned, and hence that he was either actually present at the time of the fire, or so recently theretofore as to have been able to start the fire, and we see no reason why we should adjudge differently.

But petitioner insists that the action of the state court finding him guilty of the offense charged against him is "illegal and void" under the circumstances, and that he should now be released on a writ of habeas corpus. With this contention we cannot agree. He was actually in the state court at the time of the trial, made his full defense on the merits, including the defense here set up, of his absence from the state of West Virginia when the crime was committed, and days were consumed in the trial, with the result above indicated, which we think should not be disturbed by this court. The supreme court

of the United States has often had before it the question of the extradition of fugitives from one state to another, and nearly every phase of such cases has been considered. The following are some of the most interesting cases decided by that court: Kerr v. People, 119 U. S. 436, 7 Sup. Ct. 225; Mahon v. Justice, 127 U. S. 700, 8 Sup. Ct. 1204; Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. 40. The first two deal practically with instances of kidnapping, and in each case it was decided that such action would not avail as a defense, or oust the trial court of its jurisdiction. In the last-named case, where the transfer was lawfully made, pursuant to extradition proceedings, and the petitioner nevertheless, as here, insisted that he was not a "fugitive from justice," and amenable to the jurisdiction of the trial court, the supreme court held that he was, and remanded him for trial to the state court. The court further decided that, in so far as the question of flight could be made a jurisdictional one, and treating it as such for the purposes of that case, it was equally as available in the state as in the federal courts, and, while clearly maintaining the right of the federal courts by habeas corpus to discharge a person, either before or after trial in the state court, where he was restrained of his liberty in violation of the federal constitution and laws, held that such power was a discretionary one, and the exercise of which should not be encouraged, except in cases the circumstances of which might require immediate action on the part of the federal court; citing Ex parte Royall, 117 U. S. 241, 251, 252, 6 Sup. Ct. 734, as containing a general discussion of the doctrine of when the federal authorities should and should not interfere on writ of habeas corpus; and in this same connection In re Loney, 134 U. S. 372, 375, 10 Sup. Ct. 584, and New York v. Eno, 155 U. S. 89, 96, 97, 15 Sup. Ct. 30, may also be given.

It is manifest upon the facts and circumstances of this case that the petitioner should not be discharged from custody in this proceeding, and that he should be left to pursue his remedy by appeal to the court of last resort in the state of West Virginia, and from that court to the supreme court of the United States, if he feels aggrieved. In Robb v. Connolly, 111 U. S. 624, 637, 4 Sup. Ct. 544, 551, the supreme court said:

"Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States, and the laws made in pursuance thereof, whenever these rights are involved in any suit or proceeding before them."

Here there seem to us to exist no special circumstances calling for the issuance of the writ, and it will not be assumed that the state court will not fully protect petitioner in all his rights. It must be further borne in mind that the writ of habeas corpus cannot be used to serve the purposes of a writ of error. The record shows that 90 days were allowed petitioner from the time of his conviction within which to apply for a writ of error and supersedeas to the action of the trial court of the state. Just what has been done or is proposed to be done with this appeal does not appear, but this proceeding will not answer for that purpose. Stevens v. Fuller, 136 U. S. 478, 10 Sup. Ct. 911; In re Savin, 131 U. S. 279, 9 Sup. Ct. 699; In re Luis Oteiza

y Cortes, 136 U. S. 330, 10 Sup. Ct. 1031; Andrews v. Swartz, 156 U. S. 272, 15 Sup. Ct. 389; Bergemann v. Backer, 157 U. S. 659, 15 Sup. Ct. 727. The judgment of the lower court is affirmed, and the petitioner remanded to the custody of the proper state authorities.