**Ex parte BROWN.**
**Civ. A. No. 8029.**

United States District Court
E. D. Michigan, S. D.
April 13, 1950.

Gregory M. Pillon, Detroit, Mich., for petitioner.

Perry A. Maynard, Assistant Attorney General, for respondent.

THORNTON, District Judge.

In the above entitled cause an application for a writ of habeas corpus was filed on March 15, 1949. On March 24, 1949, respondent filed its answer and under date of April 1, 1949, this Court made an order denying the application for a writ of habeas corpus on the grounds that the petitioner had not exhausted his remedies in the courts of the state of Michigan, and that habeas corpus was not the proceeding authorized by law for the relief prayed for in the said application; that thereafter the petitioner filed notice of appeal and on December 8, 1949, the United States Court of Appeals for the Sixth Circuit, Brown v. Frisbie, 178 F.2d 271, 272, rendered an opinion remanding the cause back to this court "for further procedure in conformity with the views herein expressed; factual issues to be determined and appropriate findings filed by the district judge."

Counsel was appointed by the Court to represent the petitioner and a hearing was held on March 16 and 17, 1950, at which time the petitioner testified in support of his claim in answer to which the respondent introduced in evidence through an official of the State of Michigan Prison System certain pertinent records, and further offered the testimony of Mr. Hugo A. Simon who identified himself as the transfer officer designated in the Governor's Commission to transfer the petitioner from the state of Georgia to the state of Michigan, and from these witnesses there was established substantially the following:

That while on parole from the Michigan State Prison, Jackson, Michigan, the petitioner, Brown, was sentenced to a term of imprisonment in the United States Penitentiary at Atlanta, Georgia, and that under the provisions of this sentence he was eligible for release on July 29, 1944; that the Michigan authorities had caused a detainer to be placed at the United States Penitentiary at Atlanta, and that some time immediately prior to July 29, 1944, the warden of the United States Penitentiary at Atlanta communicated with the warden of the Michigan State Prison at Jackson, Michigan, and informed the Michigan official that the petitioner William Brown would not sign a waiver of extradition. The records of the institution and the testimony of Brown developed the further fact that on several prior occasions, while on parole from the Michigan State Prison, Brown had served prison sentences in other jurisdictions, and that on at least one prior occasion he had signed a waiver of extradition and agreed to return voluntarily in the custody of the Michigan officials from Chicago, Illinois, and that he was familiar with parole violation proceedings.

On the 29th day of July, 1944, upon the petitioner's release from the Federal institution at Atlanta, he was taken into custody by members of the sheriff's office of the county in which the Federal Penitentiary is situated and the said deputy sheriffs were accompanied by Mr. Simon, the Michigan transfer officer, whereupon Brown, in company with the foregoing officers, was delivered by the said deputy sheriffs to the county jail where he was retained in custody until the time of departure to the state of Michigan.

The petitioner, in anticipation of his return to Michigan on a parole violation warrant, had, prior to his release from the United States Penitentiary at Atlanta, prepared a petition for a writ of habeas corpus, and this petition for a writ of habeas corpus was taken from him without his consent by the Georgia deputy sheriffs and apparently destroyed by these officers; that the said deputy sheriffs cursed at him and informed him that "a n——— had no constitutional rights in Georgia."

During the time that Brown was in the county jail in Atlanta he consulted with an attorney named Crutchfield who had come to the jail to interview another prisoner, Brown paying Crutchfield a small amount of money as a retainer for the purpose of having this attorney prepare a petition for a writ of habeas corpus for the said Brown.

Upon the departure of the Michigan Transfer Officer Simon for Georgia for the purpose of returning Brown to the state of Michigan, he, Simon, had in his possession return transportation for himself and Brown, the said reservations requiring that they depart on the same day that Simon arrived in Atlanta, in spite of the fact that the Michigan authorities had prior knowledge that Brown was not going to waive extradition, Simon explaining that because of the war time restrictions on travel, it was necessary that the reservations be obtained some time prior to the time of departure, and that if he was not able to return with the prisoner on the day of his arrival, he would be required to make other arrangements for transportation at a later date.

In spite of the fact that the Michigan Transfer Agent Simon had knowledge of the fact that Brown was desirous of appearing before a judge in the state of Georgia, and was making an effort towards this end, Simon, with Brown in his custody, boarded a train between 4:00 and 5:00 P. M. on July 29, 1944, for their return to Michigan; and that before the train had left the state of Georgia Brown informed the Michigan transfer agent that he was being kidnapped, that his attorney Crutchfield was getting a writ of habeas corpus for him and that he, Brown, would be taken off the train before he crossed the state line.

From the time that Simon first had any contact with Brown until Brown's arrival at the Michigan State Prison at Jackson, he received courteous treatment from the Michigan Transfer Officer Simon.

The state of Georgia at the time involved in this transaction had not adopted a uniform extradition act.

William Brown, the petitioner herein, was the fugitive wanted by the State of Michigan, and at the time in question the extradition papers were in proper order.

In his petition for a writ of habeas corpus Brown does not allege, nor has any proof been offered to this Court that the said petitioner has exhausted the remedies available to him in the courts of the state of Michigan.

While it is apparent from the foregoing facts that the petitioner, Brown, did not waive extradition and did everything possible within his limited means to obtain a hearing in the courts of the state of Georgia prior to his removal to the state of Michigan, and while it is further apparent that the fact that he was desirous of having a hearing was known, or should have been known, to the Michigan transfer officer, Simon, before he left the state of Georgia with his prisoner, yet these circumstances do not authorize this Court to order petitioner's release under a writ of habeas corpus since he is presently held in custody by the warden of the Michigan State Prison at Jackson, Michigan, as a parole violator upon a valid mittimus which had

not expired at the time he was so returned to custody, and the right of the state of Michigan to so retain the petitioner in custody is not impaired by the manner in which he was returned to Michigan from the state of Georgia, there being no violation of Federal statutory and/or constitutional provisions by virtue of the means used in returning the petitioner to the custody of the Michigan prison authorities.

"* * * it has been held that where a prisoner has been convicted of a crime and thereafter escapes or violates the provisions of a parole granted to him, he may not escape the consequences of the judgment or conviction by reason of his illegal, improper, or unlawful return to the jurisdiction for the purpose of satisfying the judgment." 165 A.L.R. 950, and cases cited therein.

In Eaton v. State of West Virginia, 4 Cir., 1898, and reported in 91 Fed. 760, 762, wherein the Appeal Court reviewed the action of the District Court remanding the petitioner to the custody of the state officers after a hearing on a writ of habeas corpus, and wherein the said petitioner had, among other things, complained as follows: "Petitioner, William Eaton, for answer to return made by H. C. Richards to the writ of habeas corpus, says, notwithstanding the return, that he (petitioner Eaton) is held in custody under the judgment or sentence of conviction of the criminal court of Ohio county, West Virginia; says that said judgment or sentence is not operative and valid against him, petitioner, because he says that said court got control of his person otherwise than 'by due process of law,' in this, to wit: 1. He (petitioner) was prevented, when arrested in Chicago by the agent of West Virginia, from showing by writ of habeas corpus, which he requested permission to do, that he was not in West Virginia when the offense with which he was charged was committed, and because as a fact he was not in the state of West Virginia when said crime was committed, and this he is ready to verify. Wherefore petitioner says such judgment is invalid."

The Court of Appeals for the Fourth Circuit, in arriving at its decision, stated in part as follows:

"But petitioner insists that the action of the state court finding him guilty of the offense charged against him is 'illegal and void' under the circumstances, and that he should now be released on a writ of habeas corpus. With this contention we cannot agree. He was actually in the state court at the time of the trial, made his full defense on the merits, including the defense here set up, of his absence from the state of West Virginia when the crime was committed, and days were consumed in the trial, with the result above indicated, which we think should not be disturbed by this court. The supreme court of the United States has often had before it the question of the extradition of fugitives from one state to another, and nearly every phase of such cases has been considered. The following are some of the most interesting cases decided by that court: Ker v. People of State of Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204 [32 L.Ed. 283]; Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40 [36 L.Ed. 934.] The first two deal practically with instances of kidnapping, and in each case it was decided that such action would not avail as a defense, or oust the trial court of its jurisdiction. In the last-named case, where the transfer was lawfully made, pursuant to extradition proceedings, and the petitioner nevertheless, as here, insisted that he was not a 'fugitive from justice,' and amenable to the jurisdiction of the trial court, the supreme court held that he was, and remanded him for trial to the state court. The court further decided that, in so far as the question of flight could be made a jurisdictional one, and treating it as such for the purposes of that case, it was equally as available in the state as in the federal courts, and, while clearly maintaining the right of the federal courts by habeas corpus to discharge a person, either before or after trial in the state court, where he was restrained of his liberty in violation of the federal constitution and laws, held that such power was a discretionary one, and the exercise

of which should not be encouraged, except in cases the circumstances of which might require immediate action on the part of the federal court; citing Ex parte Royall, 117 U.S. 241, 251, 252, 6 S.Ct. 734 [29 L.Ed. 868], as containing a general discussion of the doctrine of when the federal authorities should and should not interfere on writ of habeas corpus; and in this same connection In re Loney, 134 U.S. 372, 375, 10 S.Ct. 584 [33 L.Ed. 949], and People of State of New York v. Eno, 155 U.S. 89, 96, 97, 15 S.Ct. 30, 39 L.Ed. 80, may also be given."

"It is manifest upon the facts and circumstances of this case that the petitioner should not be discharged from custody in this proceeding, and that he should be left to pursue his remedy by appeal to the court of last resort in the state of West Virginia, and from that court to the supreme court of the United States, if he feels aggrieved. In Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 551 [28 L.Ed. 542] the supreme court said: 'Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States, and the laws made in pursuance thereof, whenever these rights are involved in any suit or proceeding before them.' "

"Here there seem to us to exist no special circumstances calling for the issuance of the writ, and it will not be assumed that the state court will not fully protect petitioner in all his rights. It must be further borne in mind that the writ of habeas corpus cannot be used to serve the purposes of a writ of error. The record shows that 90 days were allowed petitioner from the time of his conviction within which to apply for a writ of error and supersedeas to the action of the trial court of the state. Just what has been done or is proposed to be done with this appeal does not appear, but this proceeding will not answer for that purpose. Stevens v. Fuller, 136 U.S. [468], 478, 10 S.Ct. 911 [34 L.Ed. 461]; In re Savin, 131 U.S. [267], 279, 9 S.Ct. 699 [33 L.Ed. 150]; In re Luis Oteiza y Cortes, 136 U.S. 330, 10 S.Ct. 1031 [34 L.Ed. 464]; Andrews v. Swartz, 156 U.S. 272, 15 S.Ct. 389 [39 L.Ed. 422]; Berge-mann v. Backer, 157 U.S. 659, 15 S.Ct. 727 [39 L.Ed. 845]. The judgment of the lower court is affirmed, and the petitioner remanded to the custody of the proper state authorities."

▮ Since the petitioner, Brown, in the instant matter complains of the manner in which he was extradited from the state of Georgia as of *July 29, 1944,* and since his application for a writ of habeas corpus was filed in this Court on *March 15, 1949,* this would seem, therefore, to be a case that would not present special circumstances which might require immediate action on the part of a federal court.

▮ Since the petition filed herein does not allege that the petitioner has exhausted the remedies available to him in the courts of the state of Michigan, nor was there any proof offered at the hearing, in support of the said petition, that the petitioner had exhausted the remedies available to him in the said state courts, nor at the said hearing was there the slightest indication that the petitioner had even attempted to invoke the remedies available to him in the state courts, this Court, therefore, is without jurisdiction to entertain the said application, under the provisions of Sec. 2254, U.S.C., Title 28, 28 U.S.C.A. § 2254.

In Darr v. Burford, 70 S.Ct. 587, 592, the Supreme Court of the United States, on April 3, 1950, handed down an opinion wherein the provision set forth in Sec. 2254, U.S.C., Title 28, 28 U.S.C.A., that the applicant is required to exhaust "the remedies available in the courts of the State" was discussed at great length and it was therein stated in part as follows:

"In 1944 the unanimous per curiam opinion of Ex parte Hawk (321 U.S. 114, 116-117, 64 S.Ct. 448, 88 L.Ed. 572) stated the fully developed and established exhaustion doctrine in its most frequently quoted form. 'Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted.' " And further

in the same opinion is found the following: "Solicitous as we are that no man be unconstitutionally restrained and that prompt, certain and simple methods for redress be available, those ends for which modern habeas corpus has been evolved can best be achieved by requiring in ordinary cases the exhaustion of state remedies and review here."

It is hereby ordered that the within writ of habeas corpus be, and the same hereby is dismissed.