COLLINS v. FRISBIE.

No. 11269.

United States Court of Appeals
Sixth Circuit.

May 28, 1951.

Shirley Collins, in pro. per.

Stephen J. Roth, Edmund E. Shepherd, Lansing, Mich., on brief, for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal from denial by the United States District Court of a petition for writ of *habeas corpus,* wherein the petitioner avers that he was illegally arrested and maltreated in Chicago, Illinois, by two Michigan police officers, and forcibly kidnaped by them and returned to Michigan, where he is now illegally imprisoned.

The petitioner charges that he has been denied due process of law, right of counsel, and a hearing in court. He shows that no requisition was made upon the Governor of Illinois for his apprehension therein as a fugitive from justice and for his delivery to the authorities of the state of Michigan. In his statement of facts in support of his petition, he alleges that, prior to his arrest on February 19, 1942, in Chicago, Illinois, he had resided in that city for ten months. He states that he was arrested at a bus station in Chicago, handcuffed, and taken by force to the Twelfth Street Police Station, where the Michigan police ordered him to be held in custody; that when he refused to answer any questions until he could consult a lawyer, he was attacked and beaten with blackjacks by the Illinois and Michigan police officers; that the Michigan officers ordered the Illinois authorities not to let him see a lawyer or anyone else,

saying that it would do him no good for they were taking him back to Flint, Michigan.

According to his averments, he was questioned again on the next day by the officers of both states and, when asked if he was ready to go back to Michigan without causing any additional trouble and if he was ready to talk, he replied that he would not decide until he could consult a lawyer; whereupon he was again attacked with blackjacks by both the Michigan and the Illinois officers and beaten into unconsciousness. He declares that, on the following day, he was delivered to the Michigan police officers by the Chicago Police Department, and was carried to Flint, Michigan. He avers that he has been confined in prison since February 21, 1942.

So far as the record discloses, the petitioner has been given no hearing for determination of the truth or falsity of the allegations of his petition for writ of *habeas corpus.* In an order denying the petition, the district judge asserted that the fact that petitioner had been brought from another jurisdiction "by alleged illegal means, such as kidnaping, or unlawful force, did not deprive the sentencing court of jurisdiction." The court cited Robinson v. United States, 6 Cir., 144 F.2d 392, affirmed 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944, to the proposition that the presence of the defendant in the court which imposed sentence gave it complete jurisdiction over his person, regardless of how such presence was procured.

On its facts, the Robinson case bears no analogy to the case at bar. The statement of this court relied upon by the district court related to an assignment of error that the order of a California district court directing Robinson to be returned to the Kentucky district court was in contravention of the provisions of the Removal Statutes, Title 18, section 591, [now § 3041] United States Code. Any defects in the removal proceedings were regarded as immaterial upon the principle stated. *But Robinson had not been kidnaped or forcibly brought into Kentucky.* The California district court had directed that he be returned to the Kentucky district court for trial.

The present case is governed by our later decision in Brown v. Frisbie, 6 Cir., 1949, 178 F.2d 271, in which two of the judges now sitting participated. The opinion writer in the instant case concurred in the opinion in the Robinson case. In Brown v. Frisbie, the petition for writ of *habeas corpus* alleged that petitioner had been forcibly kidnaped in Georgia and brought to Michigan by a police officer of that state, with the connivance and brutal assistance of four deputy sheriffs in Georgia. As we pointed out, the appellant, Brown, averred that the officers attempted to persuade him to sign a waiver, which he declined to do; whereupon, he was attacked by four deputy sheriffs and the Michigan police officer. He alleged further that he was threatened with a rope and pistols, was intimidated and beaten; yet he refused to sign the waiver. He said that he was handcuffed, shackled and told that "a n——er had no constitutional rights in Georgia"; was dragged to a scout car from the sheriff's office by four deputy sheriffs and the Michigan officer, hustled to the railroad station and aboard a train for Michigan, the officer of which state was instructed to keep him handcuffed, in shackles, and in his seat until the state line had been crossed, with the assurance of the deputy sheriffs that they would "stall the lawyer" who was preparing to resist the petitioner's extradition. Our mandate was that the case be remanded to the district court for further procedure, including the determination of the factual issues, appropriate findings to be filed by the district judge.

There is no material difference in crucial facts or in principle between Brown v. Frisbie and the instant case. The same district court pursued the same course in each case. It is argued that our decision in the former case is not in conformity with the opinions of the Supreme Court in Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283, and Ker v. People of State of Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421. At first blush, it would seem that we are out of line with those authorities which are, of course, binding upon us; but careful analysis and thoughtful considera-tion will, in our judgment, demonstrate that we are not.

In Mahon v. Justice, decided in 1887, the petitioner for *habeas corpus*, who was charged with murder in Kentucky, was violently seized and forcibly abducted to that state from West Virginia while requisition for his return was pending before the Governor of West Virginia. The Supreme Court held that no mode is provided by which a person wrongfully abducted from one state to another by persons acting without warrant or authority of law can be restored to the state from which he was taken, if held upon any process of law for an offense against the state to which he has been carried. The court stated that the only question which was presented for its determination was whether in the circumstances the petitioner was entitled under the Constitution and laws of the United States to release from detention under the indictment, by reason of his forcible and unlawful abduction. The answer was given in the concluding paragraph of the opinion, 127 U.S. 715, 8 S.Ct. 1212: "So in this case we say that, whatever effect may be given by the state court to the illegal mode in which the defendant was brought from another state, no right, secured under the constitution or laws of the United States, was violated by his arrest in Kentucky, and imprisonment there, upon the indictments found against him for murder in that state." It was asserted that whether Congress might not provide for the compulsory restoration of a person to the state from which he has been wrongfully abducted and whether such provision would not greatly tend to the public peace along the borders of the several states were not matters for consideration of the court at that time. It should be observed that *there was no federal statute against kidnaping in existence at the time Mahon v. Justice was decided.*

The court said that the earlier case of Ker v. Illinois, supra, had direct bearing. There, the prisoner had been kidnaped in Peru by a person lawfully delegated to receive him from the Peruvian authorities. Without presenting any demand upon them, the delegate forcibly placed the pris-

oner on board a United States vessel, transferred him to another, and brought him to California against his will. Before the prisoner's arrival in that state in forcible custody, the Governor of Illinois had made a requisition upon the Governor of California for the delivery of the prisoner as a fugitive from Illinois justice. He was lawfully extradited from California to Illinois, where he was tried and convicted and his sentence affirmed by the highest court of the latter state. On writ of error, the Supreme Court of the United States affirmed the judgment of the state court. It was said that how far the forcible transfer of the defendant, so as to bring him within the jurisdiction of the state where his offense was committed, may be set up against the right to try him is the province of the state court to decide, presenting no federal question reviewable by the Supreme Court of the United States. *In the instant case, we think a federal question is presented.*

It is true that the Supreme Court has adhered to the doctrine of Mahon v. Justice, supra, and Ker v. Illinois, supra. See Burton v. New York Central & Hudson River Railroad Company, 245 U.S. 315, 38 S.Ct. 108, 62 L.Ed. 314; Pettibone v. Nichols, 203 U.S. 192, 217, 27 S.Ct. 111, 51 L.Ed. 148 (with a lone voice, that of Mr. Justice McKenna, crying in the wilderness); Adams v. New York, 192 U.S. 585, 596, 24 S.Ct. 372, 48 L.Ed. 575; In re Johnson, Petitioner, 167 U.S. 120, 126, 17 S.Ct. 735, 42 L.Ed. 103; Lascelles v. State of Georgia, 148 U.S. 537, 543, 545; Cook v. Hart, 146 U.S. 183, 190–192, 13 S.Ct. 40, 36 L.Ed. 934. It should be borne in mind, however, that all these cases were decided before the enactment of a national anti-kidnaping law.

In 1932, the Congress took cognizance of the increasing danger to the domestic tranquility and security of our people by condemning as a criminal act the transportation in interstate commerce of any person unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever and "held for ransom or reward". Act of June 22, 1932, c. 271, 47 Stat. 326. Our national legislature was

not satisfied that the original Act was clear enough to assure the validity of federal prosecution in numerous instances where such prosecution would be questionable under the then existing form of the Act. Accordingly, the Anti-Kidnaping Act was forthwith amended in 1934; and more teeth were put into it. After the words "carried away by any means whatsoever and held for ransom or reward" were added the words, "or otherwise." The sole exception was made of the kidnaping of a minor by his or her parent. *No exception of law officers, state or federal, from the scope and coverage of the Act was provided for.* Act of May 18, 1934, c. 301, 48 Stat. 781, 18 U.S.C. 408a [now § 1201].

In Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 397, 80 L.Ed. 522, the Supreme Court rejected the contention that the words "ransom" and "reward" mean only pecuniary benefits and that the rule of *ejusdem generis* restricts the words "or otherwise". The opinion quoted from H. R. 1457, 73d Cong. 2d. Sess., May 3, 1934, the statement that federal jurisdiction is extended under the Act "to persons who have been kidnaped and held, not only for reward, *but for any other reason,* except that a kidnaping by a parent of his child is specifically exempted." (Italics supplied.)

In Chatwin v. United States, 326 U.S. 455, 463, 66 S.Ct. 233, 237, 90 L.Ed. 198, it was held that conviction for alleged violation of the federal anti-kidnaping Act could not be sustained in circumstances, wherein a fifteen-year-old girl willingly was taken across the state line for continuance of a "celestial" marriage relationship with a cultist, inasmuch as it was not established that she had been held for ransom, or reward, *or otherwise;* but the court declared that "Comprehensive language was used [in the 1934 Act] to cover every possible variety of kidnaping followed by interstate transportation."

From the interpretation of the federal anti-kidnaping Act in the Gooch and Chatwin cases, we think it clear that the allegations of the petition in the case at bar charge a federal offense against the state officers who kidnaped and abducted

the petitioner from Illinois to Michigan. In such circumstances, if the petitioner establishes the averments of his petition, the writ of *habeas corpus* should eventuate in his discharge. The issue involved here is not, as in the earlier cases before the enactment of the federal anti-kidnaping statute as amended, a matter of comity between the states. A state may not lawfully try, convict and punish a person brought within its territorial confines by force and violence exercised by its officers in violation of a federal criminal statute. The courts of the United States should uphold the constitutional guarantee of due process of law by all appropriate means within their lawful powers, including issuance in last resort cases of the writ of *habeas corpus*. Certainly, if evidence obtained by wire tapping be such "dirty business" as to be suppressed, and if every safeguard is to be placed against the securing of convicting evidence by unreasonable and unlawful search and seizure, a citizen, regardless of how depraved or vicious he may be, may not be seized, kidnaped and forcibly abducted from one state to another by police officers acting beyond their territorial jurisdiction in violation of a criminal law of the United States enacted to prevent kidnaping. Officers of the law are no less immune from the condemnation of the statute than are ordinary citizens; indeed, they should be held to strict accountability.

To uphold criminal acts of either state or federal police officers who violate an explicit federal statute, by permitting a citizen kidnaped by them to be brought to trial and punishment in a jurisdiction to which he has been forcibly brought without warrant of law, would in practical effect lend encouragement to the commission of criminal acts by those sworn to enforce the law. Obviously fear of criminal punishment has been an insufficient deterrent on the police officers involved in this case, if the averments of the petition be accepted as true. The petitioner is entitled to a hearing upon these allegations.[1]

Accordingly, the cause will be remanded to the United States District Court for hearing upon the merits of the petition, with full opportunity to be afforded the petitioner to adduce evidence in support of the fact averments of his petition. Let the factual issues involved be determined by the district judge, and appropriate findings be filed by him.

MILLER, Circuit Judge (dissenting).

I am of the opinion that the judgment of the District Court dismissing the application should be affirmed upon the following grounds:

It does not appear "that the applicant has exhausted the remedies available in the courts of the State," which under § 2254, Title 28, U.S.Code is a necessary condition precedent to the granting of the application in this preceeding. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88

---

1. In our view, we are privileged under the Supreme Court opinion in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, to hold as we do that previous denial of petition for certiorari to the Supreme Court as a condition precedent to an application for a writ of *habeas corpus* addressed to the district court is unnecessary *in this case*, because of such "exceptional circumstances" found to exist here as to require prompt federal intervention. It appears that certain United States District Judges in the same district are upholding the action of state officers in forcibly abducting and kidnaping from other states and bringing, without warrant of law or extradition, persons charged with crime into the State of Michigan for trial. See Hatfield

v. Warden of State Prison, D.C.E.D. Mich., 88 F.Supp. 690, 691; Ex parte Brown, D.C.E.D.Mich., 90 F.Supp. 50. Moreover, the district judge in the instant case has ignored our decision in Brown v. Frisbie, 6 Cir., 178 F.2d 271.

We think, therefore, that the course of this case should not be arrested on technical procedural grounds, but should be expedited by petition for certiorari to the Supreme Court for prompt review of our decision, if the highest tribunal deems it advisible to grant such petition. This would be the most expeditious route for final solution of what would seem to be an urgently practical problem in the administration of justice in certain criminal cases.

L.Ed. 572. The statement of the Court in Darr v. Burford, supra, 339 U.S. at page 219, 70 S.Ct. at page 598, that "Nothing has been pleaded or proved to show that here exceptional circumstances exist to require prompt federal intervention" is equally applicable to this case. The petition complains of illegal confinement since February 21, 1942. The present action was not filed until March 14, 1950. The petition contains no allegation explaining the delay, makes no showing of "exceptional circumstances of peculiar urgency", Ex parte Hawk, supra, 321 U.S. at page 117, 64 S.Ct. at page 450, and does not explain why the regular and orderly procedure in the State Court should not be followed before asking for federal intervention.

The application, coming after the trial and sentence in the state court proceedings, comes too late. The point now raised was available as a defense in the state court trial, but was not there raised or relied upon by appellant. It can not now be raised in a collateral proceeding in a federal court in a later attack on the state court judgment. United States ex rel. Jackson v. Brady, 4 Cir., 133 F.2d 476, 481, certiorari denied 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702, rehearing denied 319 U.S. 784, 63 S.Ct. 1315, 87 L.Ed. 1727; Parker v. United States, 4 Cir., 184 F.2d 488; Ex parte Spencer, 228 U.S. 652, 660–661, 33 S.Ct. 709, 57 L.Ed. 1010; Friedberg v. United States, 5 Cir., 69 F.2d 170. See also Robinson v. United States, 6 Cir., 144 F.2d 392, 396; Woolsey v. Best, 299 U.S. 1, 57 S.Ct. 2, 81 L.Ed 3. Even if not treated as waived, it has not as yet been presented in any State Court proceeding available to the applicant. We can not assume that it would not receive as full consideration in such a State Court proceeding as it would receive here, or that the applicant would not obtain full and prompt relief in such a proceeding, if he is entitled to it.

This view of the case makes it unnecessary to consider the question discussed in the majority opinion, upon which I express no opinion. Nor does it in any way affect what rights, if any, the appellant may have against the arresting officers.